## CAMP *v.* HORTON.

1. Where an owner of land executed an instrument to another, stating that he sold to such other person "all the timber measuring 8 inches and over" on such land, that the purchaser was to pay a certain amount in the manner specified, and was to have six months to take the timber from the land, and that the landowner was to have the tops of the trees, the purchaser acquired such an interest in the timber as authorized him to bring an action of trover against a third person who unlawfully entered upon the land, cut trees therefrom of the character described in the conveyance, changed them into saw-logs, removed such logs and converted them.

2. The evidence was sufficient to require the submission of the case to the jury, and the grant of a nonsuit was error.

Submitted June 19, 1908.—Decided January 15, 1909.

Trover. Before Judge Wright. Floyd superior court. October 14, 1907.

On December 2, 1905, W. J. Camp brought his action of trover against W. N. Horton to recover certain logs described as follows: "900 saw-logs, consisting of pine logs with a few oak, being about 10 to 16 feet in length, 8 inches to 3 feet in diameter, said logs located on the land of H. P. Waters on the left-hand side of the wagon road leading from the Dalton road to the Hight farm, whereon Alex. Jones now resides, in Floyd county, Ga." The alleged value was $350. The defendant was alleged to be in the possession of the property so sold. He did not demur to the plaintiff's petition, but alleged in his answer that for want of sufficient information he could neither admit nor deny the paragraph of the petition which alleged that he was in possession of the property, but he denied that the plaintiff had title to it. On

the trial the plaintiff introduced evidence tending to show as follows: On November 4, 1890, J. L. Hight received a conveyance of land lot number 114 in the 23d district and third section of Floyd county, from S. E. Bonsack, administrator. He went into possession of the property, subsequently sold the southwest quarter of the lot to Scott Morgan, and remained in possession of the other three quarters uninterruptedly for 16 or 17 years. While so in possession on November 9, 1905, he executed an instrument to W. J. Camp, containing the following: "I, J. L. Hight, do hereby sell to W. J. Camp all the timber measuring 8 inches and over on three fourths of lot number (114) one hundred and fourteen in the (23rd) twenty-third dis. and (3rd) third section Floyd Co., Ga. Said W. J. Camp is to pay ($85.00) eighty-five dollars for said timber, ($5.00) five dollars cash and eighty dollars on demand. Said W. J. Camp has 6 months to take said timber off of land. Said Hight is to have the tops of the trees." Hight remained in possession of the land. The evidence indicated that Camp went upon the land. A witness testified: "I remember what timber was on the land on the 9th day of November, 1905, at the time of the trade between Camp and Hight. The logs sued for in this case came off of the land described in the agreement between Camp and Hight. After the trade between Camp and Hight was made, Horton got the logs in this case off of said lot (or had it done). I saw the pile of logs. I passed there every day. They were on the side of the road. I have never been in the sawmill business. Have been in the timber business some. I have cut logs and marketed them and had them scaled up. My best judgment is that there was 150,000 to 200,000 feet of lumber in those logs. I estimate that the timber in these logs, located as these logs were, was worth at that time $3 per thousand, according to my best judgment. It looked like there were some thousand logs. There was a pretty good pile. I can state that these logs came off of the land described in the paper made between Camp and Hight. Those particular logs were cut before the 1st of December, early in the fall. They cut some logs after they went to hauling, but some were already cut. The back water had floated them around. I never did see Camp in possession of this pile of logs. They were cutting at that time, I think. At the time this trade was made between Camp and Hight the tim-

ber was in lot number 114, and Mr. Horton afterwards put in teams and went to hauling it off. I saw Mr. Camp down there, but I do not know that he was in possession. He was on the lot of land. He notified Mr. Horton of it. These logs had not been hauled from this land at the time Camp notified Horton."

At the conclusion of the evidence, the defendant moved for a nonsuit, because there was no evidence to sustain the allegations of the petition as to the number and description and value of the logs; because it was not shown that the logs were ever in possession of the plaintiff, or that the plaintiff ever demanded possession of them from the defendant; because an action of trover would not be a proper remedy to recover the property; and because if any one could bring and maintain such an action to recover the logs, it would be Hight, not Camp. The court sustained the motion, and the plaintiff excepted.

C. E. Carpenter and Lipscomb, Willingham & Doyal, for plaintiff. W. J. Nunnally, M. B. Eubanks, and F. W. Copeland, for defendant.

ATKINSON, J. The evidence sufficiently sustained the allegations, as to the number, description, and value of the logs, to authorize a submission of the case to the jury. There was no demurrer to the sufficiency of the description in the petition. If the plaintiff was entitled to the logs, and the defendant converted them, taking possession without the plaintiff's permission, no demand was necessary before bringing an action of trover. If timber is unlawfully cut from land and carried away and converted by a person not entitled thereto, trover is a proper action to recover it, if the plaintiff is one having the right to sue. The evidence is not very clear as to just when the logs were cut—whether before or after the contract between Hight and Camp was made; but it was sufficient to authorize the jury to find that they were cut and carried away after that time.

The real question in the case was whether Camp had such a right to the logs as authorized him to bring an action of trover against one who unlawfully entered upon the property, and cut and carried them away. Did Camp have the right to bring the suit? In Morgan v. Perkins, 94 Ga. 353 (21 S. E. 574), an owner of land on which there was standing timber executed to another an instrument by which he sold to the latter "all of the saw-timber

measuring 12 inches and over in diameter at the stump on lot of land 93 [naming the district and county], . . timber to be cut off the land by December 25, 1886." It was held that this passed title to so much of the timber described as was cut before December 25, 1886, unless this limitation was subsequently waived by the seller. In the opinion Mr. Justice Simmons said: "The timber being realty, the purchaser acquires by the written conveyance an interest in the land, subject to be divested if he fails to remove the timber within the time limited by the conveyance. This is a limitation upon the estate granted; and if the timber is not removed within the time prescribed in the limitation, the estate terminates." In *Baxter* v. *Mattox,* 106 *Ga.* 344 (32 S. E. 94), the question under discussion was whether the period of limitation for cutting timber on several tracts of land embraced in a contract there under consideration began to run as to all of the lands from the time when the grantee entered on any one of the lots, or began as to each lot from the time of entry upon it. In the discussion the language was used that "it was not a conveyance of a fee-simple title to land, but a mere grant of a license to use timber growing thereon for certain purposes." But the question for decision was not whether the grantee obtained an interest in the realty or a mere license without interest, but was as to the time during which he had a right to cut the timber. In *McRae* v. *Stillwell,* 111 *Ga.* 65 (36 S. E. 604, 55 L. R. A. 513), an instrument in the form of a deed purported to convey to named grantees, their heirs and assigns, at a specified price per acre, "all the pine timber suitable for sawmill purposes" on described lots of land. It acknowledged receipt of a specified sum, and recited that the grantor agreed that the amount left unpaid should be paid in a certain specified manner. It also purported to convey to the grantees, their heirs and assigns, "full right of way for railroads, tram-roads, and wagon-roads in and through the said lands for the purposes above stated, said right of way to continue as long as said mill operations may require." It was held: "That the true intent and meaning of this instrument was to convey to the grantees, their heirs and assigns, all the timber suitable at the date of the instrument for the purposes indicated; but that it was incumbent on the grantees, or their successors in title, to cut and remove such timber from the lots

within a reasonable time from the date of the conveyance, and that on failure so to do their interest in the timber ceased and determined. . . That inasmuch as the instrument in question conveyed an interest in realty, though the estate was determinable, it was entitled to be recorded; and, if duly recorded, it was admissible in evidence without proof of execution." Here was a distinct recognition that the instrument conveyed an interest in the realty, that is, in the timber which formed a part of the realty, determinable upon failure to cut and remove such timber within a reasonable time. It was not treated as creating a bare license without interest or title. In *Goette* v. *Lane,* 111 *Ga.* 400 (36 S. E. 758), practically the same ruling was repeated. In *Johnson* v. *Truitt,* 122 *Ga.* 327 (50 S. E. 135), an owner of land on which there was standing timber executed to another a contract in the form of a deed, in which he granted, bargained, and sold to the latter, "his heirs and assigns, all the timber and logs suitable to be manufactured into crossties," on described lots. The purchaser was given all rights of ingress and egress necessary for the manufacture and removal of the crossties. The instrument then provided: "It is further understood and agreed that the said I. F. Johnson is to have 12 months from the date hereof to manufacture said timber into crossties and remove the same; and at the expiration of said time this lease expires, and all the timber left thereon is to revert to the said H. G. Truitt, his heirs and assigns." On the evening of the day fixed in the contract for the expiration of the right to cut crossties, the purchaser had cut some, but left a few lying on the land. He sent for these the next day, and the landowner refused to permit him to take them, claiming that the lease had expired and that the ties belonged to him. The purchaser brought an action of trover for them against one who claimed them under the landowner. It will be observed that the instrument itself provided for a termination of the right at a particular time, but declared that "all the timber" left at the expiration of the time should belong to the landowner. It was held that the crossties which had been cut before the expiration of the time belonged to the purchaser, and did not become the property of the landowner as "timber." The purchaser was accordingly held to be entitled to recover. In discussing the case the right of the purchaser was referred to as a

license, and not an absolute title to the timber. But it was not essential to the decision of the case or the correctness of the judgment to declare the interest of the purchaser to be a mere license. In fact the expression that he did not acquire the "absolute title" to the timber indicates that it was not intended to declare that he acquired no interest at all, either absolute or qualified. Under the facts of that case it was not necessary to determine whether the purchaser, during the time of the continuance of his contract, had a qualified or determinable interest in the timber or a mere license to cut. The prior decisions were not reviewed or modified. In *North Ga. Co.* v. *Bebee,* 128 *Ga.* 563 (57 S. E. 873), the instrument under consideration was held to convey an estate in fee to certain trees, with an interest in the soil sufficient for their growth, though the fee to the soil remained in the grantor; and, under the terms of the conveyance, the estate in the trees was not terminated and forfeited by a failure of the grantee to remove them in a reasonable time. In *Warren* v. *Ash,* 129 *Ga.* 329 (58 S. E. 858), the instrument then under consideration was held to convey an estate in growing trees, determinable upon the grantees' failure to cut within a reasonable time, not less than five years.

In the construction of a written instrument conveying growing trees, the intention of the parties derived from the contract is to be determined. It is possible for an owner of land to grant a mere license in relation to it. He may grant an estate in growing trees defeasible or determinable, or he may grant an absolute estate to certain trees or timber. By the instrument involved in the present case the landowner granted to the purchaser of the timber an interest or estate determinable if the latter should not take the timber from the land within the time limited. The plaintiff, thus having an interest in the timber which formed a part of the realty, was entitled to protect it against a mere trespasser who severed a portion of the timber from the realty and carried it away. When the timber was cut it became personalty, and the defendant who converted it was subject to an action of trover for so doing (*Woods* v. *McCall,* 67 *Ga.* 506); and the plaintiff had such an interest as authorized him to bring the action for the timber wrongfully severed from the realty and converted by the defendant. See Hartford Iron Mining Co. *v.* Cambria Mining Co., 93 Mich. 90 (53 N. W. 4, 32 Am. St. R. 488).

The grant of a nonsuit was error.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*