## DILLARD *et al. v.* CUSSETA NAVAL STORES. COMPANY.

Where an equitable petition was filed, seeking to enjoin the cutting of timber on certain land, and the plaintiffs alleged that one holding under the owner of the fee-simple title, and with the consent of the latter (who received the consideration), made a lease for turpentine purposes for ten years, and conveyed all the growing trees of a certain character on the land, with certain rights and easements, and that the plaintiffs were the owners and entitled to hold and enjoy all of the rights, privileges, benefits, claims, and advantages set forth in the lease contract, "as the transferees and assignees thereof through successive assignments in writing of the said lease contract, the transfer and assignment of such rights, privileges, and claims being made and executed to your petitioners on the seventh day of February, 1913," such allegations were subject to special demurrer on the ground that they did not show who made the "successive assignments," or sufficiently describe or set them forth.

JUNE 15, 1915.

Equitable petition. Before Judge Gilbert. Chattahoochee superior court. July 17, 1914.

The Cusseta Naval Stores Company, a firm, brought an equitable petition against Dillard and others, alleging in substance as follows: On October 21, 1907, Shirling, Nisbit & Cook entered into a contract with one Kissick, by the terms of which they leased and purchased from him all of the growing trees, for turpentine purposes, located upon certain described land, and also rights of ingress and egress, the lease to continue for a term of ten years. There was also conveyed by the contract all of the pine timber then upon the land which was suitable "for saw and wood purposes." At the time of the execution of the contract of lease, Kissick was in possession of the land under an agreement of sale and purchase from E. J. Wynn, the owner of the fee-simple title thereto. The lease contract was made by and with the approval and consent of Wynn, who prepared it and received the entire purchase-money paid by the lessees. Upon the execution of the lease contract, Shirling, Nisbit & Cook, the lessees and purchasers, entered upon the land and commenced to exercise the rights and privileges granted, and such rights and privileges have been continuously exercised by the lessees and their transferees and assigns ever since. "Your petitioners are now the owners of and are entitled to have, hold, and enjoy all the rights, privileges, benefits, claims, and advantages enumerated in and set forth in said lease contract, as the transferees and assignees thereof through successive transfers and

assignments in writing of said lease contract, the transfer and assignment of such rights, privileges, and claims being made and executed to your petitioners on the seventh day of February, 1913." On December 7, 1909, Wynn sold the tract of land to the defendants, and they are now the owners in fee simple, subject, however, to all of the rights, privileges, and claims set forth in the lease contract, "and which is [are] given to petitioners as the transferees and assignees thereof." At the time of the purchase of the land by the defendants, the lessees in the lease contract were in the actual possession, use, and enjoyment of the rights, privileges, and claims enumerated therein; and defendants had notice of such possession and use, as well as knowledge of said lease contract at the time the purchase was made. "The rights, privileges, and claims which were sold and granted to the lessees and purchasers, their transferees and assignees, by the terms of said lease, have been continuously exercised, carried on, and conducted by such lessees, transferees, and assignees ever since said lease contract was executed." The timber has been worked for turpentine in the usual manner and with full knowledge of the defendants, and without hindrance, molestation, or interference upon their part, until February of the present year, when the defendants entered upon portions of the land and began cutting and felling the growing timber which had been leased to be worked for turpentine. They have already cleared 25 acres or more, having cut timber of the value of $300. They are threatening to enter upon other portions of the land and to cut growing pine timber therefrom, which has been boxed and is being worked by the plaintiffs for turpentine purposes, "and which belongs to your petitioners by terms of said lease agreement." The prayers were for a judgment for the damages already accrued, and for an injunction against a continuation of the alleged trespass. By amendment the plaintiffs added the following allegations: "That your petitioners are now, and have been since they purchased the rights, privileges, benefits, claims, and advantages enumerated and set forth in said original lease contract, in the actual possession and enjoyment of the rights, privileges, and benefits therein conferred, and are using and boxing said timber for turpentine purposes by boxing and chipping the growing timber therein, and removing the same therefrom."

The defendants demurred to the petition. The demurrer was overruled, and they excepted.

*A. W. Cozart, S. T. Pinkston,* and *Wynn & Wohlwender,* for plaintiffs in error.   *T. T. Miller,* contra.

LUMPKIN, J.   (After stating the foregoing facts.)   The plaintiffs alleged, that one Kissick was in possession of a tract of land under an agreement of purchase; that, with the consent of the owner of the fee, Kissick sold and leased to a named firm the growing trees for turpentine purposes, and also sold all the trees suitable "for saw and wood purposes;" that the plaintiffs were "the owners" of the rights included in the written contract, as the transferees and assignees thereof, through successive transfers and assignments in writing of said lease contract, "the transfer and assignment of such rights, privileges, and claims being made and executed to your petitioners on the seventh day of February, 1913." A demurrer was filed, one ground of which raised the point that it was not alleged who made the successive transfers and assignments; and another that the assignments or transfers were not sufficiently set forth or described.   We can perceive no good reason why the plaintiffs should be allowed to allege that they are the owners of timber, turpentine rights, and easements under successive assignments and transfers of a written contract known as a timber and turpentine lease, and refuse to give the defendants any information as to who made the successive assignments and transfers mentioned.   A conveyance of growing trees is a conveyance of an interest in the realty; and a mere transfer of the instrument by which the conveyance is made does not, without more, suffice to transfer such interest in the realty.  *Tillman* v. *Bomar,* 134 *Ga.* 660 (68 S. E. 504) ; *Gaskins* v. *Green,* 141 *Ga.* 552 (81 S. E. 882). If the transfer is not merely of the contract, but of the rights, privileges, or property described therein, this may suffice.   If the pleadings contained sufficient allegations as to the facts, it could be determined what was the effect of the transfers.   But the allegations in this case were not sufficient to withstand a special demurrer.

The plaintiffs showed that the rights sought to be protected were granted to others, but failed to connect themselves with such others by any proper allegations.

The rules as to evidence which will serve to show a prima facie title to realty, and that an equitable title may be protected, do not

authorize insufficient allegations of fact.   The fourth and fifth grounds of the demurrer should have been sustained.

> *Judgment reversed.   All the Justices concur.*