BUTLER NAVAL STORES COMPANY *v.* GLASS *et al.*

No. 12440. NOVEMBER 22, 1938. REHEARING DENIED DECEMBER 3, 1938.

*C. C. Stone* and *Jule Felton,* for plaintiff.
*C. W. Foy, John C. Butt,* and *J. H. Pate,* for defendants.

BELL, Justice.   Butler Naval Stores Company Inc. filed a suit for injunction, specific performance, cancellation, and other equitable relief, against Mrs. A. L. Williamson, Mrs. H. J. Garrett and the F. C. Glass Turpentine Company, a firm composed of F. C. Glass and Albert Glass.   The controversy relates to the right to use timber for turpentine purposes, and involves conflicting claims of the plaintiff company and the Glass Company, both engaged in the turpentine business.   The timber in question is a part of the estate of H. J. Garrett, deceased, who left a will in which the land on which the timber is situated was bequeathed to his wife, Mrs. H. J. Garrett, for life, with remainder to his daughter, Mrs. A. L. Williamson.   The plaintiff claimed under a lease executed by Mrs. A. L. Williamson, the owner of the remainder estate, and contended that in equity, for several reasons alleged, it was entitled to use the timber for turpentine purposes as against Mrs. Garrett, the life-tenant, and the other defendants, although it had never obtained a lease from Mrs. Garrett.   On the other hand, the Glass Turpentine Company contended that it had obtained a lease signed by both the life-tenant and the remainderman; and that its claims were superior to those of the plaintiff, for the reason, among others, that the plaintiff held no lease from Mrs. Garrett, the life-tenant. The Glass Turpentine Company was supported in its contentions by Mrs. Williamson and Mrs. Garrett.   The foregoing facts appear partly from the plaintiff's petition and partly from other portions

of the record. The Glass Turpentine Company filed a general and special demurrer to the petition, one of the grounds of which was that there was nothing to show that Mrs. Garrett, the life-tenant, "had signed any contract or lease to the said plaintiff." After an amendment by the plaintiff, this demurrer was renewed in which renewal all of the defendants joined. The court overruled all grounds of demurrer, and no exception was taken as to that ruling. On the trial, after introduction of evidence by both sides, the court directed a verdict in favor of the defendants, and the plaintiff excepted. The bill of exceptions did not formally specify the demurrers and the judgment thereon as material parts of the record, but did refer to them and asked "the certification thereof." At the close of the argument in this court, it was stated from the bench that the clerk of the trial court might be requested by the plaintiff's attorney so to supplement the transcript as to include the additional portions of the record, and that the court would later determine their materiality. Such supplemental transcript was received by the clerk of this court, and is considered to contain material portions of the record, notwithstanding, in the view which we have taken of the case, we may not place our decision on the facts therein shown. The clerk of this court is directed to accept and file the supplemental transcript. Compare *Hollingsworth* v. *Peoples Bank,* 179 *Ga.* 704 (177 S. E. 743).

The plaintiff alleged that it held a lease of the timber signed by Mrs. A. L. Williamson, the remainderman, executed on November 12, 1936, and recorded on February 6, 1937. A copy of this lease was attached to the petition, from which it appears that in the lease Mrs. A. L. Williamson and Mrs. H. J. Garrett were both named as grantors, but that it was signed by Mrs. Williamson only. It was "signed, sealed, and delivered in the presence of" two witnesses, one of whom was a notary public. To this extent the facts concerning this instrument are not in dispute, except that the defendants do not admit that the paper thus relied on by the plaintiff ever became effective as a contract or lease. While the copy as it appears in the record bears the date November 12, 1900, this is evidently due to a clerical mistake of someone, since, in the record and in the briefs, all of the parties have treated the paper as having been signed on November 12, 1936. The instrument, as copied in the record, is as follows:

"Georgia, Taylor County. This indenture, made this 12 day of November, nineteen hundred, and between Mrs. A. L. Williamson and Mrs. H. J. Garrett of the County of Taylor and State of Georgia, of the first part, and Butler Naval Stores Company, of the County of Taylor and State of Georgia, of the second part,

Witnesseth, that the said parties of the first part, for and in consideration of the sum of fifty and no/100 dollars to them in hand paid, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, Mrs. A. L. Williamson and Mrs. H. J. Garrett has granted, bargained, leased, and conveyed, and does by these presents grant, bargain, lease, and convey, unto the said party of the second part, its heirs and assigns, at the rate of $160 per thousand cups, balance to be paid when cups are hung and counted, all of the timber upon the following described tract of land, for the purpose of cupping, working, and otherwise using said timber for turpentine purposes: [describing the lands]. To have and to hold, cup, work, and otherwise use said timber for turpentine purposes, unto the said party of the second part, heirs and assigns. And it is hereby expressly covenanted and agreed that the said party of the second part may commence cupping, working, or otherwise using the said timber for turpentine purposes, or any portion thereof, at any time that the said party of the second part may desire, and shall have the right to continue to cup, work, or otherwise use the said timber and every portion thereof for the full term of.... years, beginning, with reference to each portion of the timber, from the time only that the cupping and working of each portion is commenced, it being the intention of the parties that this lease shall continue to operate until all of the timber and each and every part thereof has been cupped, worked, and otherwise used for turpentine purposes for the full period of.... years. And it is hereby further covenanted and agreed that the said party.... of the second part,.... heirs and assigns, shall have the free and unrestricted right to enter upon, occupy, and use said land for the purpose of cupping, working, and otherwise using the timber thereon for turpentine purposes as aforesaid during the continuance of this lease; and it is further covenanted and agreed that said party of the second part may have the right at any time to assign this lease, in whole or in part, and that any assignee of this lease shall have the same right of assignment, and that all the rights

and privileges of said party of the second part shall vest in whomsoever may succeed to the interest hereby conveyed to said party of the second part. And the said party of the first part for .... heirs, executors, and administrators, the said granted and leased timber, with the right to cup, and otherwise use the same for turpentine purposes, unto the said party of the second part, heirs and assigns, will forever warrant and defend. In witness whereof, the said party of the first part ha.... hereunto set hand and seal, .... the day and year first above written.

Mrs. A. L. Williamson (Seal)

Signed, sealed, and delivered in presence of:
S. Garrett. Mrs. Bessie Cooper, N. P."

From a recital in the bill of exceptions it seems that the judge directed the verdict for the sole reason that the plaintiff's lease was not signed by the life-tenant. One of the contentions of the plaintiff is that Mrs. Williamson had succeeded to the rights of Mrs. Garrett, the life-tenant, under item 5 of the will, in which it was provided that she might have the use of all of these lands during the life of Mrs. Garrett, provided she would pay to the latter, on December 1 of each year, "the sum of $400 as rent after paying all State and county and other taxes that might be levied on said lands, etc., and all upkeep of said property." There is no merit in this contention. In the first place, there was no evidence that Mrs. Williamson paid the $400 to her mother for any of the years covered by the plaintiff's claim. In the second place, a compliance with this item of the will would merely have placed Mrs. Williamson in the relation of an agricultural tenant with no right to use the timber for turpentine purposes. The $400 was to be paid "as rent," and not as the purchase-money of any timber rights or privileges.

It does not necessarily follow, however, that the court was right in directing the verdict in favor of the defendants, since if the evidence would have authorized a verdict for the plaintiff for any of the relief sought, it was erroneous to direct a finding to the contrary. Regarding the circumstances under which Mrs. Williamson signed the instrument in question, without the signature of her mother, J. S. Green, vice-president and general manager of the plaintiff company, testified as follows: "I obtained the original lease tendered me, November 12, 1936, in behalf of the plaintiff.

Mrs. A. L. Williamson signed that lease without objection. Her mother did not sign it at the time. I only know of any necessity of the mother's signing it as a layman. I kept that lease in my possession until April 16, 1937. The date of record is February 6, 1937. I never made any promise to keep it off the record. There was never any objection with Mrs. Williamson or anybody else. Before April 16, 1937, there were some conversations. After the lease had been signed for some time, the exact time not remembered, Mrs. Williamson came to my house with her husband one Sunday, and told me that her mother did not want the timber turpentined, due to the fact that she was afraid that Mr. Williamson, who was Mrs. Williamson's then husband, might squander the money; and that she wanted some delay in the matter until she could convince her mother there was not any danger of that. Mrs. Williamson's husband was with her, and we discussed the matter at some length, so we just held the matter in abeyance. She asked me to hold the contract until her mother could be convinced to join her in the lease; that her mother was old, and she did not want to worry her, and that she was worrying her. I told Mrs. Williamson that I would not start operations on the turpentine until the matter was cleared up. I kept my word. Possibly one or two or three times in passing to my different places, I would drop by and talk with either Mrs. Williamson or Mrs. Garrett. Mrs. Garrett also mentioned that they would squander the money; that some had already been thrown away; that she was going to wait a long time; that her husband told her to be particular how the money was handled. And I turned the lease back to her in consideration of an option to purchase, dated April 16, copy of which is attached to the petition; and I agreed that if any one would pay more for it than I would pay and that if I could not, then I would cancel the lease and come out of the picture. I agreed to turn back the lease to her without cancellation—nothing was mentioned about cancellation except that I would have something to show that I did have the right; that I could trace it back; and I agreed to do this, and I am willing to do it to-day. I am willing to pay as much as anybody else; or if it got too high, then we would get out of the way and cancel the contract. The signing of that agreement giving plaintiff the option to buy that land is the only reason I gave back that lease. I did it in good faith,

and thought they were doing the same. I am still willing to abide that agreement. She has not kept that agreement. I have been advised that she sold the rights to another. . . I negotiated for lease of 1936 with Mrs. Williamson and her husband. I conferred with Mrs. Williamson more than one time. When I first carried the lease for signature, Mrs. Garrett was in Macon County. They lived in the same home. Mrs. Garrett told me that they had not decided to lease the timber, but that when they did that we certainly would have a chance at it. I did not get the idea in negotiations that it was doubtful about Mrs. Garrett signing it. If I had, I certainly would not have the lease. I was traveling under the idea then that possibly she had to sign it. I wanted her signature in the original lease. Mrs. Williamson did not tell me that she would not sign unless I would agree that the lease was not to become effective unless and until her mother signed it. Mrs. Williamson signed the lease at her home, and we went to Charing to have it witnessed—to get a notary. . . After Mrs. Williamson signed the lease some weeks, I conferred with Mrs. Garrett, and she declined to sign it—never did sign it, and when I put the lease on record I knew that she had not signed it, but I did not know that she would not sign it. She told me that she wanted to hold it up until she made some arrangements that the money would not be squandered. There was no objection to me working the timber. It was a matter of what was going to become of the money. Mrs. Garrett did not tell me that before it was recorded. I had not discussed it with Mrs. Garrett until the lease was recorded. I had the lease recorded as a precaution in the event I lost the lease. I thought when I got the other signature I would bring it, and he could record that. I could not swear when I conferred with Mrs. Garrett. She declined each time, with the explanation that I stated. After Mrs. Garrett's return, Mrs. Williamson told me 'she don't want to sign now.' Mrs. Williamson did not request me to return the lease. Mrs. Williamson returned my check for $50. I accepted the check and kept it. I don't know whether the check was returned [before] or after the lease was recorded. The next move that was made after discussing with Mr. Cochran, I carried the lease down and surrendered it to Mrs. Williamson. The reason I carried it down was I was just trying to get along with people, just a little bit too lenient if you want to know the

truth, just a neighborly act. . . We did not cup Mrs. Williamson's timber, because we had agreed to mark time with her mother. She asked me to delay it."

In *Jackson* v. *Stanford*, 19 *Ga.* 14 (2), it appeared that a mortgage had been drawn for execution by two persons, but was in fact signed by only one of them. In a foreclosure proceeding the trial court pronounced the instrument a nullity, and refused a rule absolute on that ground. The Supreme Court reversed the judgment, saying: "But why is this not a good deed, as against the party that executed it? Conceding that the two Ramseys were jointly interested in this land, can not either of them create a lien to the extent of the title or interests he holds? Partners may convey their undivided interest in real estate. The members of the firm are tenants in common as to the real property owned by the firm; and any one of them can convey his undivided interest in the premises. . . That the form of this instrument may be suggestive of the fact that it never was finally executed, and might be relied on as evidence to support a plea, by the proper party, to that effect, I can readily understand; but that it should render the deed absolutely void, can not be maintained." In *Jukes* v. *Hull*, 151 *Ga.* 156 (106 S. E. 96), where a similar question was presented, this court held: "The evidence, construed in the light most favorable to the claimant, Mrs. Hull, was insufficient to authorize the finding that the release was signed by her to be delivered to Mrs. Jukes on condition only that the remaindermen also signed. Her evidence shows merely that she believed the release would be ineffectual without the signatures of the remaindermen, and that she did not believe they would sign." Under the foregoing authorities as applied to the evidence in the present case, the jury would have been authorized to find that the instrument signed by Mrs. Williamson, the remainderman, constituted a valid contract as between her and the plaintiff, with respect to her remainder interest, notwithstanding the life-tenant did not join in its execution. This ruling accords with the decisions in *Farrar Lumber Co.* v. *Andrews Lumber Co.*, 154 *Ga.* 787 (115 S. E. 492), and *Peacock* v. *Horne*, 159 *Ga.* 707 (2) (126 S. E. 813). In connection with the foregoing, see *Jordan* v. *Pollock*, 14 *Ga.* 145 (2); *Moore* v. *Farmers Mutual Ins. Asso.*, 107 *Ga.* 199, 207 (33 S. E. 65); *Mays* v. *Shields*, 117 *Ga.* 814 (4) (45 S. E. 68); *Morgan* v. *Wolpert*, 164

*Ga.* 462 (139 S. E. 15). It is true there was evidence for the defendants which might have authorized a finding that the lease was signed and delivered by Mrs. Williamson upon the condition that it would become effective only in the event her mother later joined in its execution; but this still would only have presented an issue of fact as to whether it was executed as a valid and binding contract as between the plaintiff and Mrs. Williamson, and could not change the result on the question of error in directing the verdict.

If the lease was a valid contract as between the plaintiff and Mrs. Williamson, it granted to the plaintiff the right to enter upon the land and use the timber for turpentine purposes *as against such grantor,* at least for a reasonable time. *Goette* v. *Lane,* 111 *Ga.* 400 (2) (36 S. E. 758); *Allison* v. *Wall,* 121 *Ga.* 822 (7) (49 S. E. 831). In *Brinson* v. *Kirkland,* 122 *Ga.* 486 (50 S. E. 369), it was held: "Except in extreme cases where the period is very short or very long, the court can not determine as a matter of law whether the reasonable time within which the grantee of a timber privilege should exercise the same has or has not expired. . . Where one produces the oldest recorded deed conveying timber privileges, the burden is on the opposite party to show that such interest has terminated. To this end he must produce evidence as to the situation of the property and the parties, and submit proof to the jury from which they can determine what was a reasonable time for cutting and removing the timber. . . The proof being silent as to what was a reasonable time within which to cut the timber, the court properly directed a verdict for the defendant holding the oldest recorded conveyance." Under these principles, it does not appear from this record but that the lease here in question might extend beyond the period of the life-estate; and the existence of such estate, with possible inability of the grantee to use the timber in the meantime, were circumstances which could have been considered in determining this question. See *McRae* v. *Stillwell,* 111 *Ga.* 65 (36 S. E. 604, 55 L. R. A. 513); *North Georgia Co.* v. *Bebee,* 128 *Ga.* 563 (57 S. E. 873); *Warren* v. *Ash,* 129 *Ga.* 329 (58 S. E. 858); *Camp* v. *Horton,* 131 *Ga.* 793 (63 S. E. 351); *Shippen Lumber Co.* v. *Gates,* 136 *Ga.* 37 (70 S. E. 672); *Hilton & Dodge Lumber Co.* v. *Alwood,* 141 *Ga.* 653 (2) (81 S. E. 1119); *Harrell* v. *Williams,* 159 *Ga.* 230 (125 S. E. 452); *Grant* v. *Haynes,* 164 *Ga.* 371 (4-*b*) (138 S. E. 892). Payment of the balance due on the pur-

chase-money was not a condition precedent to the use of the timber as granted in the contract. The time for payment of the purchase money was fixed in the written agreement, which did not exact payment as a condition precedent to such use. *McRae* v. *Stillwell*, supra.

Whether or not the instrument signed by Mrs. Williamson should be construed as conveying an interest in realty, so that its record amounted to constructive notice (*North Georgia Co.* v. *Bebee*, supra; *Camp* v. *Horton*, supra; *Shaw* v. *Fender*, 138 *Ga.* 48, 74 S. E. 792; *Florida Yellow Pine Co.* v. *Flint River Naval Stores Co.*, 140 *Ga.* 321, 78 S. E. 900; *Dillard* v. *Cusseta Naval Stores Co.*, 143 *Ga.* 492, 85 S. E. 701; *Ponder* v. *Mutual Benefit Life Insurance Co.*, 165 *Ga.* 366, 140 S. E. 761; *Treisch* v. *Doster*, 171 *Ga.* 525, 156 S. E. 231; *Mills* v. *Ivey*, 3 *Ga. App.* 557, 560, 60 S. E. 299; *Cherry Lake Turpentine Co.* v. *Lanier Armstrong Co.*, 10 *Ga. App.* 339, 73 S. E. 610), it appeared from the evidence that the lease in favor of the Glass Turpentine Company was subsequent in date, and there was some evidence from which the jury could have found that the Glass Turpentine Company at the time of purchasing this lease had actual knowledge of the execution of the former lease by Mrs. Williamson to the plaintiff company, and purchased with notice of whatever rights the plaintiff held thereunder. If such was the truth of the case, the lease obtained by the Glass Turpentine Company was subject to that held by the plaintiff company to the extent of whatever interest or use Mrs. Williamson may have granted thereby in right of herself as remainderman. As indicated above, the jury would have been authorized to find that the latter instrument became a binding contract with respect to such interest upon its execution and delivery by Mrs. Williamson, notwithstanding it was never signed by Mrs. Garrett, the life-tenant. But it was contended by the defendants that this lease was later surrendered by the plaintiff, with the result that the plaintiff ceased to have any right or claim thereunder. It does appear that the plaintiff surrendered the lease to Mrs. Williamson several months after its execution and record, because of dissatisfaction by the life-tenant, and that the check for the initial payment of $50 was returned to the plaintiff. On this question the evidence authorized the inference that the sole consideration for this transaction was the written promise of Mrs. Williamson that the plaintiff

would be given the opportunity to purchase this timber at the "then market price" should it again be offered for sale for turpentine purposes, and that this condition was not complied with by her. There was no cancellation or reconveyance; and under the evidence the jury would have been authorized to find that the plaintiff was restored to its original position as a result of such breach. *Schmidt* v. *Mitchell*, 117 *Ga.* 6 (4) (43 S. E. 371); *Archibald Hardware Co.* v. *Gifford*, 44 *Ga. App.* 837 (4) (163 S. E. 254). See also *Chestnut* v. *Cobb*, 163 *Ga.* 87 (135 S. E. 433); *Jordan* v. *Pollock*, supra; *Williams* v. *Cowart*, 27 *Ga.* 187 (2); *Warren* v. *Ash*, supra; *Marchant* v. *Young*, 147 *Ga.* 37 (2) (92 S. E. 863). The plaintiff on reasserting its claim would, of course, be liable for such initial sum of $50, and it does not appear that the same has been tendered. The plaintiff, however, did not owe any duty to the Glass Turpentine Company as related to this sum.

Under all the evidence the jury would have been authorized to find, that, with respect to the rights granted by the remainderman, the claim of the plaintiff company is superior to that of the Glass Turpentine Company; and that if the latter has any claim which is superior to that of the plaintiff, it exists only as a part of the life-estate, in virtue of the lease in which the life-tenant joined. A life-tenant and a remainderman are not in privity with each other, since they hold different estates in the same property, and the life-tenant owes to the remainderman the duty of ordinary care to protect and preserve the property, and to commit no act tending to the permanent injury of the person entitled to the remainder interest. Code, § 85-604; *Lazenby* v. *Ware*, 178 *Ga.* 463 (173 S. E. 86). We have seen that, in regard to the rights claimed under the respective leases, the jury could have found that the plaintiff company stood in place of the remainderman, while the defendant company represented the life-tenant. Whether or not in such case the remainderman could enjoin the life-tenant from using the timber for turpentine purposes would ordinarily be a jury question. *Brown* v. *Marlin*, 137 *Ga.* 338 (73 S. E. 495, 39 L. R. A. (N. S.) 16); *Gleaton* v. *Aultman*, 150 *Ga.* 768 (105 S. E. 445); *Lee* v. *Rogers*, 151 *Ga.* 838 (2) (108 S. E. 371); *Lanier* v. *Register*, 163 *Ga.* 236 (135 S. E. 719); *Kent* v. *Lane*, 168 *Ga.* 133 (147 S. E. 61). So, whether or not the plaintiff as grantee of the remainderman could have been found to have any right to use the timber, as

against either the life-tenant or the defendant company as her grantee, during the pendency of the life-estate, it can not be said as a matter of law, from the evidence, that the plaintiff itself did not have any interest whatever to be protected by a court of equity, or that a verdict in its favor for injunction to restrain the defendant company from using the timber for turpentine purposes would not have been authorized. It follows that the court erred in directing the verdict in favor of the defendants. Since in a case of this kind the decisive question is whether the evidence would have authorized a verdict in the plaintiff's favor for any of the relief sought, it is unnecessary, if not improper, to attempt an exhaustive consideration of the various contentions urged by the parties. In such case, the judge may have directed the verdict upon one or more of several contentions without passing upon others, and in some cases it may not appear upon what particular ground the ruling was based. In view of what has been said, we will not explore the present case further at this time. It should be remembered in this connection that the jurisdiction of the Supreme Court extends only to the correction of errors alleged to have been committed by the trial courts.

The plaintiff invoked the rule that where a judgment overruling a general demurrer to a petition has not been excepted to or reversed, it stands as the law of the case, to the effect that the petition alleges a cause of action, and that on proof of the allegations made the plaintiff is entitled to recover. *Georgia Northern Railway Co.* v. *Hutchins,* 119 *Ga.* 504 (46 S. E. 659); *Hawkins* v. *Studdard,* 132 *Ga.* 265 (2) (63 S. E. 852, 131 Am. St. R. 190); *Leathers* v. *Garrett,* 179 *Ga.* 619, 621 (176 S. E. 638). It was for this reason that we considered that a supplemental transcript showing the demurrers and the judgment thereon might become material in a decision of the case. Before the principle referred to could be applicable, however, it would be necessary for the plaintiff to introduce evidence in support of every allegation in its petition; and in view of the other rulings, we have not deemed it necessary to determine whether the evidence was sufficient for that purpose. Compare *Orr* v. *Dawson Telephone Co.,* 35 *Ga. App.* 560 (133 S. E. 924). Accordingly, we base our decision upon the law of the land as we understand it, and not upon "the law of the case," al-

**328**

though we do so without prejudice as to the applicability of the latter rule or principle.

*Judgment reversed. All the Justices concur.*