31533, 31534. MARIETTA YAMAHA, INC. et al. v. THOMAS; and vice versa.

NICHOLS, Chief Justice.

Dunwoody and Thomas each owned 50 percent of the stock in Marietta Yamaha, Inc. There was a disagreement between them as to the management of the business and Dunwoody negotiated to buy Thomas' interest. An agreement was entered into whereby the corporation would purchase Thomas' stock, thereby leaving Dunwoody as the sole stockholder. Paragraphs 5 and 6 of the agreement contained a noncompetition clause as follows: "5. As further consideration for the sale of stock hereby contemplated, the seller agrees that he shall neither own or engage, directly or indirectly, in the motorcycle business for a period of five (5) years from the date hereof in the following counties constituting the Metropolitan Atlanta Area: Fulton, Cobb, DeKalb, Clayton, Gwinett. 6. In the event that the seller desires to enter into the motorcycle business under circumstances which would constitute a violation of the non-competition clause hereinabove provided for, the parties hereby agree as follows: (a) Under no conditions shall any waiver be permitted of the noncompetitive clause, absent the

written agreement of all parties to this agreement, for a period of three (3) years from date hereof. (b) After a three (3) year period, the seller shall have the right to engage or own either directly or indirectly in the motorcycle business within the counties hereinabove named. (c) In the event of seller exercising his right within the subparagraph immediately preceding, the parties agree that all sums, to include unpaid principal balance and accrued interest, owing on the note referred to in this agreement shall be deemed paid in full, the note marked 'satisfied and paid in full,' the note returned to the Purchaser and no further liability upon said note existing on the part of the Purchaser and Larry A. Dunwoody. Any and all stock at such time which would be held in escrow shall immediately be released to the Purchaser and the Seller shall have no further claim to said stock."

Pete Hunter managed Marietta Yamaha prior to the sale of stock and for approximately nine months thereafter. After his discharge by Dunwoody, he obtained a Yamaha franchise for Clayton County, and along with his brother Fred, incorporated and began business. Pete Hunter and Thomas had been close personal friends for a number of years, and Thomas was instrumental in getting Hunter to leave New York and come to Marietta to manage Marietta Yamaha. Several months after Pete and Fred Hunter began business, Thomas made Pete Hunter two separate personal loans ($2,500 and $7,500). It is these personal loans to Hunter that allegedly violate the noncompetition clause of the agreement. Marietta Yamaha alleged in its petition that Hunter was only an agent or representative for Thomas and that Thomas' interest in the business was substantial. By amendment reformation of the sales agreement was sought. Mutual mistake and mistake of the scrivener were alleged. The amendment contended that Paragraph 6 (c) was intended to be applicable to a violation of Paragraph 5 of the agreement.

Thomas filed a motion for summary judgment and the trial court granted the motion as to the issue of reformation, but denied summary judgment on the issue of a violation of the noncompetition agreement contained in Paragraph 5.

Marietta Yamaha appeals from the grant of the partial summary judgment and Thomas cross appeals from the denial of his motion for summary judgment as to the noncompetition issue.

1. The record in this case contained more than 600 pages. A search of the entire record discloses that the only evidence of mistake is Dunwoody's statement that he "just assumed" that Paragraph 6 (c) would also apply to Paragraph 5. The terms of Paragraph 5 of the agreement absolutely forbid Thomas to engage in any competition for a period of five years. Paragraph 6 allowed an "out" for Thomas after three years by forfeiting the remaining payments due under the contract. There was no genuine issue of fact as to mutual mistake or mistake of the scrivener; therefore, the trial court did not err in granting Thomas' motion for summary judgment on the issue of reformation.

2. Prior to the Act of 1975 (Ga. L. 1975, p. 757), it was well settled that the denial of a motion for summary judgment was not reviewable by the appellate courts in the absence of a timely certificate of immediate review having been obtained in the trial court. See *Carroll v. Campbell,* 226 Ga. 700 (177 SE2d 83) (1970); *Souter v. Carnes,* 229 Ga. 220, 222 (190 SE2d 69) (1972) and *Southernaire Corp. v. Worley,* 230 Ga. 486, 488 (197 SE2d 726) (1973).

There is no provision for review of the denial of the summary judgment in Code Ann. §§ 81A-156 (h) or 6-701 (a)2(A), except by *direct* appeal with a certificate of the trial judge and an application for review to the appropriate appellate court. See Ga. L. 1975, supra. The holdings of the Court of Appeals in *Ga. Motor Club v. First Nat. Bank &c. Co.,* 137 Ga. App. 521 (224 SE2d 498) (1976) and *Simpson v. Associated Distributors,* 138 Ga. App. 516 (226 SE2d 624) (1976), to the contrary, are expressly disapproved.

Since the cross appeal in this case was from the denial of a motion for summary judgment and the procedures for appeal provided for in Code Ann. §§ 6-701 and 81A-156 were not complied with, the appeal is not properly before this court and must be dismissed.

*Judgment affirmed in Case No. 31533. Appeal*

*dismissed in Case No. 31534. All the Justices concur, except Ingram and Hill, JJ., who dissent from Division 2, and Jordan, J., who dissents.*

ARGUED SEPTEMBER 22, 1976 — DECIDED OCTOBER 19, 1976 — REHEARING DENIED NOVEMBER 2, 1976 IN CASE NO. 31534.

*Northcutt, Edwards & Germano, W. S. Northcutt, Joseph F. Page,* for appellants.

*Cofer, Beauchamp & Hawes, Peyton S. Hawes, Jr., Peter B. Glass,* for appellee.

HILL, Justice, dissenting.

In Division 2, the majority of the court dismiss the appeal in Case No. 31534 without deciding its merits, and I respectfully dissent. The three cases cited by the majority were decided prior to the enactment of Ga. L. 1975, pp. 757, 759, amending Code Ann. § 81A-156 (h), and hence are not controlling as was ably pointed out in the second division of the Court of Appeals decision in *Ga. Motor Club v. First Nat. Bank &c. Co.,* 137 Ga. App. 521 (224 SE2d 498) (1976), which the majority expressly disapproves. In my view, the Court of Appeals correctly interpreted the 1975 amendment in *Ga. Motor Club,* supra.

The majority rely on the following from the 1975 amendment: "An order denying summary judgment shall be subject to review by direct appeal in accordance with the provisions of section 6-701 (a) 2." As *Ga. Motor Club* shows, this provision is no longer exclusive. Section 6-701 (a) 2 relates to interlocutory appeals. Thus the quoted provision of the 1975 amendment says that an order denying summary judgment shall be subject to review by direct appeal in accordance with the interlocutory appeal procedure.

The 1975 amendment does not deal with cross appeals. Code Ann. § 6-803 (a) clearly provides that: "In civil cases, the appellee may institute cross-appeal by filing notice thereof within 15 days from service of the notice of appeal by appellant, and the appellee may present for adjudication on the cross-appeal all errors or rulings adversely affecting him, and in no case shall the appellee be required to institute an independent appeal

on his own right. . ."

In the case before us, the appellee has properly instituted a cross appeal and has presented for adjudication a ruling adversely affecting him. I would consider the appellee's enumeration of error on its merits.

I am authorized to state that Justice Ingram joins in this dissent.