## 52966. CONTINENTAL INSURANCE COMPANY v. WEEKES et al.

CLARK, Judge.

Does the contractual duty created by a reservation of rights agreement for providing a defense in a pending case by an automobile liability insurer continue after the death of the individual with whom it contracted? Does the exercise of that contractual obligation require consent of the decedent's administrator? Is the insurer estopped to deny coverage after it continued the defense with the administrator having been substituted as party defendant but without the company giving another notice to the administrator as to reservation of rights? Was there coverage under this policy for an employee sued by a fellow employee? Those are some of the questions presented by this appeal.

Continental Insurance Company issued an automobile liability insurance policy to Williams Brothers Concrete Company. The policy contained the usual standard exclusions. Thus excluded from coverage was any obligation for which workmen's compensation benefits were available to claimant. The policy also excluded as an insured "any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment." (R. 23).

On July 16, 1973, Thomas, an employee of Williams Brothers, was driving a truck towing another truck in which McKibben, another employee, was riding. McKibben, the fellow employee, was injured when the truck in which he was riding overturned. Both employees were within the scope and course of their employment at the time. Although he received workmen's compensation benefits for his injuries, McKibben and his wife sued his fellow employee, Thomas, on November 27, 1974, on the tort. Thomas did not inform either his employer or the insurance company of the lawsuit. He failed to answer; whereupon a default was entered.

On February 24, 1975, the insurance company sent a letter to Thomas wherein it noted that it had learned of the suit and default due to his failure to answer. The

company stated its intention to enter a defense for Thomas but with a reservation of rights and would therefore seek to open the default. This letter contained the usual notice that the insurance company was not thereby conceding liability to Thomas or that any policy issued to Williams Brothers provided any coverage to him. The company also advised Thomas to secure his own attorney. Thomas acknowledged receipt of the letter on March 28, 1975, and afterwards discussed its contents with counsel for the insurance company.

Thereafter, Continental had its attorney become counsel of record for Thomas in the tort suit. The necessary procedures were undertaken to open the default but initially were unsuccessful.

Thomas died on July 24, 1975 and on October 22, 1975, John Wesley Weekes, the county administrator, qualified as administrator of the Thomas estate by counsel for the McKibbens. Then with the consent of Continental and pursuant to Code Ann. § 81A-125 (a) Weekes was substituted as the party-defendant in the suit by McKibbens.

The tort case in default with the administrator present in court as defendant went to trial on January 7, 1976, for the limited purpose of proof as to damages. A mistrial occurred and subsequently defense counsel succeeded in having the default opened. This success placed the administrator as defendant in a position to contest the claim both as to liability and damages in the tort case as fully as if the default had never been entered.

Thereafter, on February 23, 1976, through counsel other than those handling the tort defense, the insurer filed the instant petition for declaratory judgment seeking a determination that neither Thomas nor the accident was covered by the policy of insurance issued to Williams Brothers.

The McKibbens and Weekes, as administrator, counterclaimed, asserting, inter alia, that the insurance company had not sent a reservation of rights letter to Weekes, that by entering a defense in the tort suit and continuing to handle the defense in the administrator's name under its original reservation of rights agreement,

it was thereby estopped to assert such rights.

After discovery the insurance company moved for summary judgment. The trial court denied the motion. Then, at the suggestion of appellee's counsel, judgment was entered for the defendants-appellees on the basis of waiver and estoppel. The court expressly adjudicated the insurance company "is bound to defend and subsequently shall be called upon to answer any such judgment rendered" against the administrator in the tort suit. The judgment recites that "this order constitutes the final order, adjudication and disposition of all issues in this case including both the complaint and cross-claim." This appeal followed. *Held:*

1. When an insurance company seeks to enter a defense where coverage is doubtful it may protect its rights to a determination of noncoverage by entering upon the defense under a reservation of rights fairly informing the putative insured of its position. *State Farm Mut. Auto. Ins. Co. v. Anderson,* 104 Ga. App. 815 (123 SE2d 191); *Richmond v. Ga. Farm Bureau Mut Ins. Co.,* 140 Ga. App. 215. The reservation of rights letter from the insurer to Thomas was sufficient to protect and preserve its claim of noncoverage. Appellees' counsel's brief (p. 9) admits that Thomas acquiesced in allowing Continental's attorney to act in his behalf in the tort case prior to his death.

2. Appellees argue that the death of Thomas terminated the attorney-client relationship. This argument is based on the erroneous legal theory that retention of an attorney is nothing more than creation of an agency and comes under Code § 4-214 which provides that death of either the principal or agent revokes the power. A lawyer never abandons nor foresakes his client. It is not necessary for us to consider this contention because the instant case does not involve an attorney-client relationship, but concerns a contract; specifically the reservation of rights agreement between Thomas and the insurance company. That document bound the insurer to undertake the defense. It did so. Death did not relieve the company from continuing to perform its obligation. Of course, the administrator had the power to obtain other counsel upon his being

substituted as defendant. What a travesty would be created if we accepted this contention! It would mean that the death of Thomas would have terminated the insurance company's obligation to him which would leave his estate without any defense.

3. When Weekes as administrator was substituted as a party in his decedent's place he entered the defense of the action at the point where the death of Thomas had left it, he assuming both its benefits and its burdens. See 67 CJS 1095, Parties, § 89; 1 CJS 239, Abatement and Revival, § 186. "The administrator stands in the intestate's shoes for all purposes, unless expressly excepted by some rule by law." *Agricultural Finance Corp. v. Bates,* 171 Ga. 230, 232 (155 SE 32). Thus, Weekes had no greater rights and no greater liabilities in the action than his decedent would have had if still alive. See *Whitworth v. Wofford,* 73 Ga. 259 (3); *Smith v. Fischer,* 59 Ga. App. 791, 795 (2 SE2d 156); *Patrick v. Travelers Ins. Co.,* 48 Ga. App. 777 (1) (173 SE 495).

It is established law that a personal representative of a deceased cannot set up a defense which would have been unavailable to the decedent. See Code Ann. § 113-2109; 34 CJS 687, Executors and Administrators, § 704. Where a decedent would have been estopped to raise a defense or assert a claim, so will his personal representative. See *Burkhalter v. DeLoach,* 171 Ga. 384 (3) (155 SE 513); *Wilkes v. Groover,* 138 Ga. 407 (2) (75 SE 353); 31 CJS 668, Estoppel, § 132. Because Thomas could not claim that the insurance company had waived its rights, neither could Weekes, his administrator.

4. The gravamen of the administrator's assertion in his counterclaim is that as such representative he was entitled to be informed upon his being substituted as defendant that Continental was handling the defense through a reservation of rights agreement. He says this would have enabled him to decline to abide by his decedent's contract. As Continental's contractual obligation continued after Thomas' death and was one which was enforceable by the administrator, we doubt the validity of that contention. "The administrator, as far as possible, shall fulfill the executory and comply with the executed contracts of the decedent, and he shall have a

corresponding right to demand the same of the parties contracted with." Code § 113-1525. However, we are not called upon to decide that hypothetical question as we think "the shoe is on the other foot." An administrator is a fiduciary. He must ". . . exercise good faith, care, and diligence in the management . . . of the estate." 31 Am Jur2d 102, Executors and Administrators, § 180. Upon appointment, he is required to ascertain the status of the estate, including the existence of contracts. Here he consented to being substituted as a party defendant. His fiduciary duty then and there required him to inform himself as to the terms upon which the decedent was being represented and at whose expense. Such inquiry would have developed the existence of the reservation of rights agreement under which the decedent was not obligated to pay the insurance company's counsel for representing him in the suit in which the administrator was now defendant by his own consent.[1] Having participated as a party defendant in the tort case and having accepted the performance by Continental of its obligation under the agreement with his decedent, he cannot at this late date reject the benefits to the estate, namely the opportunity by reason of the opening of the default to continue the defense in the tort case, including contesting liability of his decedent. Continental's success eliminates any necessity to discuss the administrator's assertion of prejudice.

5. As the reservation of rights agreement was binding upon the administrator and as there was no estoppel nor waiver by the insurance company, we now proceed to consider the determinative question: Was there coverage under this policy to Thomas upon the claims of the fellow servant and the latter's spouse?

The two policy exclusions set forth by the insurer in

-----

[1] If the administrator had at that time stated his decision was to terminate the agreement thereby withdrawing consent to a defense under a reservation of rights Continental would then have had the option to follow the procedure outlined in *Richmond v. Ga. Farm Bureau Mut. Ins. Co.,* 140 Ga. App. 215, supra.

its petition for declaratory judgment clearly exclude Thomas from coverage. McKibben received workmen's compensation benefits for his injuries, and it is undisputed that both Thomas and McKibben were employees acting within the course of their employment at the time McKibben suffered his injuries. "A contract of insurance clearly defining the meaning of 'insured' leaving no ambiguity or deceptive verbiage, is not open to construction, and the literal meaning must be attributed to it." *Fireman's Fund Indem. Co. v. Mosaic Tile Co.,* 101 Ga. App. 701 (115 SE2d 263). See *Cotton States Mut. Ins. Co. v. Bowden,* 136 Ga. App. 499 (221 SE2d 832); *Automatic Icemaker Co., Inc. v. Sun Ins. Office, Ltd.,* 110 Ga. App. 289 (138 SE2d 326).

While, under the facts before us, we think the summary judgment should have been granted for the insurance company, we cannot rule on that question as we are precluded from doing so by *Marietta Yamaha, Inc. v. Thomas,* 237 Ga. 840. There the Supreme Court held that in the absence of a certificate for immediate review, the denial of a motion for summary judgment is not reviewable.

*Judgment reversed. Bell, C. J., and Stolz, J., concur.*

ARGUED OCTOBER 7, 1976 — DECIDED OCTOBER 27, 1976 — REHEARING DENIED DECEMBER 15, 1976.

*Shoob, McLain, Merritt & Lyle, Robert B. Hill, M. David Merritt,* for appellant.

*William L. Skinner, John Wesley Weekes,* for appellees.