### 54367, 54368. BROWNING v. NATIONAL BANK OF GEORGIA (two cases).

WEBB, Judge.

Donald G. Browning, an officer and stockholder of Concept III, Inc., endorsed that corporation's 90-day promissory note, and several renewal notes, payable to the National Bank of Georgia for a total of $17,000. Subsequently on November 1, 1972 he executed to NBG his personal guaranty of Concept III's indebtedness to the extent of $17,000. Apparently a disagreement arose between the stockholders of Concept III, and all of them except Browning formed a new corporation known as Concept Trading, Inc. The assets of Concept III were transferred to the new corporation. When the note for $17,000 became due, it was renewed and Concept Trading, Inc. joined Concept III as a co-maker. Browning neither signed the last renewal note nor requested in writing that it be renewed. This renewal note listed, however, the guaranty of Browning as security. No additional money was advanced by NBG, and the principal of $17,000 on the renewal note represented the same loan that was originally made to Concept III and guaranteed by Browning.

Suit on the renewal note and the guaranty was filed against the co-makers and Browning. Default judgment was entered against the co-makers, and the case proceeded against Browning. NBG and Browning each

moved for summary judgment. Browning's motion was denied, and NBG was granted judgment against Browning for $17,000. Browning appealed the grant of summary judgment to NBG, and separately appealed the denial of his motion for summary judgment.[1]

Browning contends that the trial judge erred in concluding as a matter of law that he was liable to NBG on the guaranty contract, in that (1) NBG had failed to comply with the express terms of the guaranty contract, (2) Browning was discharged by the addition of a new party as a co-maker of the note, and (3) the execution of the note constituted a novation. We disagree.

1. Browning argues that by the terms of his guaranty contract he must have joined in a request in writing to renew any indebtedness of Concept III, and this he did not. He relies upon the following provision of the contract: The undersigned Browning "in further consideration of the agreement on the part of the bank upon request by the principal and the undersigned in writing to renew any indebtedness of the principal now in existence for a period of at least five days from the maturity thereof" agrees to pay the bank immediately any of the obligations secured hereby. We construe this provision to mean that as a part of the consideration for Browning's guarantee of payment, NBG would renew the indebtedness for a period of at least five days from maturity upon written request by the principal and Browning. It does not mean that a renewal could be made only upon a request in writing joined by Browning. The agreement which Browning signed provides: "The undersigned *waive notice* of acceptance of this instrument and *of the creation, extension, or renewal* of any obligation

---

[1] To have the denial of his motion for summary judgment reviewed, Browning was constrained to follow the procedure of making an interlocutory appeal pursuant to *Marietta Yamaha, Inc. v. Thomas,* 237 Ga. 840, 842 (2) (229 SE2d 753) (1976). Perhaps this cumbersome and circuitous procedure resulting from that 4 to 3 decision will be alleviated some day by a more realistic ruling.

of the principal to which it relates and of any default by the principal." ·(Emphasis supplied.)

"A surety or guarantor may consent in advance to a course of conduct which would otherwise result in his discharge. See *Twisdale v. Georgia R. Bank &c. Co.,* 129 Ga. App. 18 (198 SE2d 396); *Reeves v. Hunnicutt,* 119 Ga. App. 806 (168 SE2d 663). And see Simpson, Handbook on the Law of Suretyship, § 72, p. 343 (1950), wherein the author notes, 'Whenever the surety expressly consents in advance to the change that is subsequently made, it is clear that he should not be discharged. It may then correctly be said that he promises with reference to the new agreement, and is as much a party to it as if he had assented to it at the time it was made.' This is precisely the course defendant pursued." *Dunlap v. C. & S. DeKalb Bank,* 134 Ga. App. 893 (4) (216 SE2d 651) (1975), and *C. & S. Nat. Bank v. Scheider,* 139 Ga. App. 475, 476 (228 SE2d 611) (1976).

Browning contends further, however, that he called John Hodgens, NBG loan officer, and advised him that he no longer intended to guarantee the loan of Concept III. There was no written notice, and the guaranty contract signed by Browning provides: "This is a continuing agreement and shall remain in force until a written notice revoking it has been received by the Bank; but such revocation shall not release the undersigned from liability for any and all obligations of the principal [Concept III] then in existence, or from any renewals or extensions thereof, in whole or in part, and whether such renewals or extensions are made before or after such revocation." But as the late Judge Eberhardt said in *Haynie v. First Nat. Bank,* 117 Ga. App. 766 (3) (162 SE2d 27) (1968), "To be effective a notice of revocation [of guaranty] must be in strict and full compliance with provisions of the contract calling for notice, and must be clearly expressed, unqualified, positive and absolute."

2. Browning next asserts that he was discharged by the addition of a co-maker to the renewal note.

The guaranty contract of Browning was not for a specific note or indebtedness, but by its terms he agreed to pay to NBG ". . . all obligations of the principal [Concept III] held by the bank of any kind or character," limited

only to the principal sum of $17,000. The debt of $17,000 remained an obligation of Concept III and the addition of another co-maker did not release Concept III or Browning.

We have held that the addition of a new guarantor did not increase the risk for another guarantor. *Farmer v. Peoples Am. Bank,* 132 Ga. App. 751, 753 (209 SE2d 80) (1974) (cert. den.). Here, as in that case, the obligation of neither Concept III nor Browning was increased. Actually, as we view it, all of the assets of Concept III having been transferred to the new corporation, Concept Trading, Inc., it was well for NBG to get the latter's name on the renewal note also. Concept III was not thereby released, and neither was Browning.

3. Browning says the execution of the new debt constitutes a novation.

"Any change in the nature or terms of a contract is called a novation; such novation, without the consent of the surety, discharges him." Code Ann. § 103-202. Browning had waived notice of any renewal, and agreed that he was obligated to pay any renewal or extension of the note. There was no novation. The renewal note was for the same obligation with the original maker still a maker, and the addition of a co-maker did not release either the original maker or its guarantor. *Farmer v. Peoples Am. Bank,* 132 Ga. App. 751, supra. It would appear that the addition of the new corporation as an obligor on the note afforded greater security, if anything, to the principal debt and this should not relieve the guarantor of his liability. *Cullens v. Sterling Discount Corp.,* 110 Ga. App. 372 (1) (138 SE2d 623) (1964).

*Judgments affirmed. Deen, P. J. and Birdsong, J., concur.*

ARGUED SEPTEMBER 6, 1977 — DECIDED SEPTEMBER 20, 1977.

*Powell, Goldstein, Frazer & Murphy, Jerry B. Blackstock, Karen Wildau,* for appellant.

*Schwall & Heuett, Donald J. Goodman,* for appellee.