### 54442. HELLER v. MAGARO et al.

McMURRAY, Judge.

Marty Heller, in consideration for and as a condition of his employment with a firm of certified public accountants, agreed that for a period of two years subsequent to the termination of his employment he would not compete with the firm with reference to any present clients or any clients who became clients during his employment, although he might compete for other accounting clients in the same geographical area and he might become a full-time employee of any client of the firm. He then further agreed that if he did desire at the time of his termination to perform services for clients of the firm who desired his services or to perform any additional or new services the firm normally performed within the two-year period subsequent to his termination he would agree to compensate the firm "at the rate of one years average gross billing (based on the average of the one year immediately preceding my termination of employment and the one year immediately subsequent to my termination of employment) in lieu of any possible damages, restraints or injunctions which might be awarded," at the option of the firm to accept. If accepted he agreed to pay monthly installments over a two-year period immediately subsequent to his termination of employment "based upon a mutually agreed 'best,' estimate of what the total compensation . . . will be."

Heller began work as an ordinary accountant and later was put in charge of the East Point office. In February of 1975 he became a licensed certified public accountant. He elected to cease work on the 28th of February, 1975, and opened his own business on March 1,

1975, in competition with his former employers. After he got his certificate there was some discussion as to Heller becoming a partner but he elected to go on his own. He proceeded to contact the clients of the firm and inform them that he was opening an office and wanted them to transfer their business to him, advising the firm that he was contacting these clients and gave the firm a list of the clients which he thought were going to go with him. Heller contends there was no discussion as to compensation for those clients in accordance with the agreement contending he did not lead the firm to believe that they would be compensated; that he took over the rent of the office building and the firm voluntarily gave up their right to continue renting the building; that he negotiated with them as to purchasing the furniture, and they owed him some money ($113) which he would offset against the purchase price of the furniture; and, that he has refused to turn this furniture over to them pending a settlement as to their standing.

Thereafter, the plaintiffs (Magaro, Peel and Gross, certified public accountants) sued Heller for damages for breach of contract contending that he had informed them he was resigning his employment; that they had accepted his resignation, had agreed to close their office, allowed defendant to assume their office space, offered to sell him the furniture and elected to receive compensation from the defendant pursuant to the second paragraph of the employment contract, believing in good faith that defendant would perform his obligations pursuant to the document. Thereafter, defendant advised that he would not fulfill his obligations under said contract and would not make any payments to plaintiffs after they had acted to their detriment, believing the defendant would perform in good faith this agreement. In Count 1 plaintiffs seek $30,000 actual damages and attorney fees in the amount of $10,000 resulting from the bad faith of the defendant who has been stubbornly litigious and caused plaintiffs unnecessary trouble and expense. In Count 2 plaintiffs re-assert the averments of paragraphs 1 through 13 of Count 1 and contend the defendant has acted fraudulently and maliciously for the purpose of acquiring plaintiffs' East Point office without the payment of just compensa-

tion for same, seeking actual damages in the amount of $60,000 and $20,000 punitive damages to deter the defendant from similar actions in the future, as well as reasonable attorney fees in the amount of $10,000. In Count 3 plaintiffs contend that during his employment and prior to the time that he notified plaintiffs of his intention to resign, defendant had systematically contacted the clients of plaintiffs' East Point office and induced and solicited them to give their accounting business to defendant, all of which was a breach of his duty to be faithful to and not compete with the plaintiffs. By reason of said torts plaintiffs have suffered actual damages in the amount of $60,000. They also seek $20,000 in punitive damages to deter similar actions in the future and reasonable attorney fees in the amount of $10,000. In Count 4 they seek the return of all furniture, equipment, books and files which the defendant is refusing to release to them and for his bad faith in being stubbornly litigious and causing them unnecessary trouble and expense they seek reasonable attorney fees in the amount of $500.

Defendant answered, denying in the main the averments of each count while admitting jurisdiction and signing of the agreement; that plaintiffs offered to sell the furniture at the office, that he agreed to take over the rental of the property, but otherwise he denied the complaints contained in the various counts. Other defenses were added, contending that the contract was against public policy, void and unenforceable; the complaint fails to set forth with particularity the acts of fraud and malice averred, the contract was in violation of the ethics and rules of the American Institute of Certified Public Accountants and also otherwise unenforceable by the courts, and further that if plaintiffs had any rights they have not accrued and hence no justiciable controversy is before the court. After discovery defendant moved for partial summary judgment, which was denied. By amendment plaintiffs added Count 5 alleging certain acts of fraud and deceit and in Count 6 seeks damages for unjustified enrichment of the defendant in taking over plaintiffs' East Point office by lulling them into the belief that he intended to pay them therefor.

After stipulation of certain facts plaintiffs moved

for summary judgment as to Counts 1 and 4 of their complaint, and the defendant again moved for partial summary judgment. The court denied defendant's motion for summary judgment because of the previous denial of same and granted the plaintiffs' summary judgment motion in connection with certain items of personal property which defendant admitted that he was holding which was owned by the plaintiffs, leaving the remaining counts relating to fraud and tortious interference with plaintiffs' business relationships to be tried by a jury. Thereafter, plaintiffs voluntarily dismissed without prejudice Counts 2, 3, 5 and 6 which left only Counts 1 and 4 pending before the court. Defendant appeals the denial of his motion for partial summary judgment and the granting of a partial summary judgment in favor of the plaintiffs. *Held:*

1. The first enumeration concerns the denial of defendant's motion for partial summary judgment. Denial of summary judgment is not reviewable by the appellate courts in the absence of a timely certificate of immediate review or the granting of an interlocutory appeal by the appellate court unless there be a final judgment in the case and the cause is no longer pending in the lower court. See *Marietta Yamaha, Inc. v. Thomas,* 237 Ga. 840, 842 (2) (229 SE2d 753); *Stallings v. Chance,* 239 Ga. 567 (238 SE2d 327). The first enumeration of error is not meritorious.

2. The second and third enumerations complain of the granting of the partial summary judgment by the court. Defendant admitted that he was purchasing plaintiffs' property (furniture) but that plaintiff and defendant were in disagreement as to the amount due thereon. The order issued on summary judgment is somewhat vague but merely appears to be a determination that the property is owned by the plaintiffs. Insofar as this judgment goes as to determining ownership of the property, the same is affirmed, but insofar as to attempting to settle the issue as to bad faith, the award of attorney fees and return of the property, the same remains for jury determination.

*Judgment affirmed. Birdsong, J., concurs. Bell, C. J., concurs in the judgment only.*

ARGUED SEPTEMBER 20, 1977 — DECIDED JANUARY 17, 1978 — REHEARING DENIED FEBRUARY 16, 1978 —

Marty I. Heller, *pro se.*
O'Callaghan, Saunders & Stumm, B. Lee Crawford, Jr., for appellees.