### 11910. WASHINGTON LOAN & BANKING CO. *v.* HOLLIDAY.

Where a draft by one person on another is indorsed by a third person, whose indorsement is neither necessary nor proper for transmission of title, in the negotiation of the draft, but is for the sole purpose of guaranteeing payment, the person so indorsing becomes a surety thereon.

(*a*) The liability of a surety can not be extended beyond the actual terms of his engagement, and will be extinguished by any act or omission which alters the terms of the contract, unless it be with his consent.

DECIDED MAY 11, 1921.

Complaint; from city court of Washington — Judge Sutton. October 18, 1920.

Application for certiorari was denied by the Supreme Court.

A draft was as follows:

"Washington, Ga., March 16, 1920                    No......

"On demand pay to the order of Washington Loan and Banking Co.                                                                $ 30.00

Thirty........................no/100 dollars

" To Georgia Preserving Co., Atlanta, Ga.

[Signed] B. O. Griswell."

As thus drawn, the draft was presented to Holliday, the defendant in this case, with the request that he indorse it; which he did.

Afterwards and without his knowledge or consent, the figure "1" was inserted between the dollar mark and the figures "30.00," and the words "one hundred" were written in the space preceding the word "thirty," so that when presented to the bank by Griswell the amount of the draft appeared to be $130.

The bank, without communicating with Holliday, paid to Griswell $130. When the draft was presented to the Georgia Preserving Company, payment was refused by it, and Holliday paid to the bank $30, the amount for which the draft was drawn when he signed it, and refused to pay the additional $100. Thereupon the bank sued him on the altered draft. The defendant filed a plea denying liability, and specially pleaded as follows: "Further answering plaintiff's petition, this defendant says that this defendant occupies the position of and is a mere surety in the papers sued on, and that after the execution of said check, without the knowledge or consent of this defendant, a material change was made in said check, to wit, a change of the amount to be paid thereunder from $30.00 to $130.00, and, said material change having been made without the knowledge or consent of this defendant, this defendant is not liable on this check on any sum." On the trial the facts stated above were proved and in addition the defendant testified that Griswell brought him a letter of introduction from the Georgia Preserving Company, and "after he had been here for several days he came to me in the drug-store down here and asked me if I would indorse a small draft for him. He said he wanted some money to pay his hotel bill. He had this draft filled out for $30, and on the strength of the recommendation that the Georgia Preserving Company sent me I indorsed it." It was shown by the plaintiff that a few days before this transaction, Holliday indorsed another draft for Griswell. The trial resulted in a verdict for the defendant, the plaintiff made a motion for a new trial, on the general grounds, the motion was overruled, and the movant excepted.

*Colley & Colley,* for plaintiff.

*W. A. Slaton,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.) The first question to be determined in this case is, was Holliday an accommodation indorser, a surety? If he was, the second question is, was he liable to the bank on the instrument sued upon in its changed

condition? That Holliday was merely an accomodation indorser, a surety, is borne out by the record and is practically conceded by both parties to the suit. On the trial he swore that he "did not get any part of the money produced by the cashing of the check—not a penny," and counsel for the bank admit in their brief that "Holliday, as now appears, was only accommodating indorser for Griswell." Section 3541 of the Civil Code of 1910 is as follows: "The form of the contract is immaterial, provided the fact of suretyship exists; hence, an accommodation indorser is considered merely as a surety." Where a draft is drawn by one person on another, and a third party indorses the draft, and the indorsement is neither necessary nor proper for transmission of title to the draft in the negotiations thereof, but is for the sole purpose of guaranteeing payment of the draft, such indorser becomes a surety thereon. *Preston* v. *Dozier,* 135 *Ga.* 25(1) (68 S. E. 793), and cases cited. It is therefore clear that Holliday was merely a surety. Thus the first question is settled and we are brought to the consideration of the second.

That the draft when signed by Holliday was for $30 only was testified by him and was not contradicted. Sections 3540, 3543 of the Code of 1910 are as follows: "The contract of suretyship is one of strict law, and his liability will not be extended by implication or interpretation." "A change of the nature or terms of a contract is called a novation; such novation without the consent of the surety, discharges him." In *McMillan* v. *Heard National Bank,* 19 *Ga. App.* 153 (91 S. E. 237), Judge Jenkins said: "The law looks with favor upon the rights of an indorser or surety, and his liability is one of strict law." In *Taylor* v. *Johnson,* 17 *Ga.* 521, 522(3), it was held: "The liability of a surety cannot be extended beyond the actual terms of his engagement, and will be extinguished by any act or omission which alters the terms of the contract, unless it be with his consent." In *Bethune* v. *Dozier,* 10 *Ga.* 238, 239, Judge Lumpkin said: "No principle of law is better settled at this day than that the undertaking of the surety being one stricti juris, he cannot, either at law or in equity, be bound further or otherwise than he is by the very terms of his contract; and that if the parties to the original contract think proper to change the terms of it without the consent of the surety (which is not disputed they have a right to do), the surety is discharged.

He is not bound by the old contract, for that has been abrogated by the new; neither is he bound by the new contract, because he is no party to it; neither can it be split into parts, so as to be his contract to a certain extent and not for the residue, he is either bound in toto or not at all." In *Simons* v. *McDowell,* 125 *Ga.* 204 (53 S. E. 1032), Presiding Justice Cobb said: " The change in the terms of the contract releases the surety from liability as against any person, no matter how he comes into possession of the instrument. If the alteration be admitted, the contract becomes one to which the surety is not a party, and he can not be sued 'upon a debt he never did contract.' " See, in this connection, *Denton* v. *Butler,* 99 *Ga.* 264(1) (25 S. E. 624), and cases cited; *Anderson Banking Co.* v. *Chandler,* 151 *Ga.* 408 (107 S. E. 60), and cases cited; 2 Daniel on Negotiable Instruments, 1551; §1373, and cases cited in footnotes 1 and 2; 2 Cyc. 154, § 2(d), and cases cited in footnote 50.

The fact that there was nothing in the way the check was drawn to arouse the suspicion of the bank, or that it had no notice of the fraudulent alteration, does not render the surety liable. In *Hill* v. *O'Neill,* 101 *Ga.* 836 (28 S. E. 997), Justice Atkinson said: " If the proposition thus announced be generally true as respects joint makers of a promissory note, how much stronger the reason why this change should operate to discharge one who is confessedly a surety. The argument was pressed upon us with great earnestness by the learned counsel for the plaintiff in error, that if the surety, who was sued in the present case, signed this paper, and delivered it to the principal to be by him negotiated, he thus placed it within the power of the principal, by making the alteration, to perpetrate a fraud upon one who took it bona fide; and therefore that such a person ought, as against such surety, to be protected. In the case of Wait *v.* Pomeroy, 20 Mich 425, the Supreme Court of that State, through Chief Justice Campbell, in a well-considered opinion, holds that ' A memorandum written under a promissory note and qualifying its obligation is a part of the contract; and its destruction vitiates the note, even in the hands of an innocent bona fide holder.' Upon the argument of that case, it would seem, from the opinion, that a similar position to that assumed in this was taken by counsel who appeared in favor of the bona fide holder. In reply to that position the court says: 'There seems at first a

plausibility in the argument, that a party by signing a note with a separate memorandum beneath, puts it in the power of the holder to gain easier credit for the note, than it would be likely to gain if altered in the body. But, as it was well suggested on the argument, no one is bound to guard against every possibility of felony. And practically, it is a matter of every-day occurrence to feloniously alter negotiable paper as successfully by changes on the face as in any other way. The public are not very much more likely to be defrauded in one way than in another. There can never be absolute safety except by looking to the character and responsibility of the persons from whom such paper is received, and who are always bound to respond for the consideration if it is forged. Little *v.* Derby, 7 Mich. 325. If a party makes a contract in such a manner as is authorized by law, he has a right to object to being bound by any other. A bona fide holder before maturity is allowed to receive the genuine contract, discharged from any equities attaching to the contract itself, as between the original parties, but he can not get a contract where none was made." In the case from which this quotation is taken the rate of interest was changed from 8 to 12 per cent. In discussing this case Justice Atkinson (p. 835) said: " That the change was made is not questioned, but there is nothing to indicate the assent of the surety to the change. Does the instrument sued upon, in its changed condition, express the obligation of the contract into which the surety entered? To ask the question, it seems to us, is to answer it. The surety's obligation, according to his real contract, was to pay a given rate per cent. The contract of the surety, according to the instrument sued upon in its changed condition, was to increase his liability, by imposing upon him the obligation to pay a higher rate per cent. It therefore can in no just sense be said to be the contract of the surety. In so far as the same concerns the surety, it is immaterial by whom the alteration was made. If made by the transferee of the note, it requires no argument to prove the discharge of the surety, upon the well recognized and universally accepted principle, that one who commits a forgery can not thereby impose upon the other a legal obligation to perform the contract according to the tenor of the forged instrument; and it is equally certain that a material alteration in the obligation of the contract by one who is bound as principal, made after it is signed by the surety, will

discharge the surety from liability to one who took the changed instrument bona fide and without notice."

It is insisted that Holliday was negligent in indorsing the draft as originally drawn, it being so drawn that it made the forgery easy and hard to be detected, and that the rule, " when one of two innocent persons must suffer by the wrongful act of another, he must suffer who placed it in the power of such third person to do the wrong," is applicable. A complete reply to this proposition is that the suggested negligence of the indorser was not the proximate or effective cause of the fraud. Between the time that Holliday indorsed the draft and the time it was paid by the bank a criminal act, a forgery intervened, and the rule just quoted "has never been carried to the extent of making one person civilly liable for the crime of another, and, on principle, we think it can not be." As was said in *O'Neill* v. *Hill,* supra, "No one is bound to guard against every possibility of forgery."

The evidence demanded the verdict, and the court did not err in directing it or in overruling the motion for a new trial.

*Judgment affirmed.    Broyles, C. J., and Luke, J., concur.*