### 61886. COSBY v. A. M. SMYRE MANUFACTURING COMPANY.

McMURRAY, Presiding Judge.

A. M. Smyre Manufacturing Company ("Smyre") is a North Carolina corporation engaged in, among other things, the manufacture and sale of carpet yarn. In the sale of said yarn Smyre dealt with two Georgia corporations, Delta Carpets, Inc. (a subsidiary corporation) and Delta Diversified, Inc. (the parent corporation).

As an inducement to Smyre to extend credit to and to otherwise deal with Delta Carpets, Inc., the customer; John H. Cosby, and one other of the customer's officers, executed an unconditional guaranty for "the due and punctual payment of any and all open accounts,

notes, drafts, debts, obligations and liabilities, primary or secondary (whether by way of endorsement or otherwise), of Customer, at any time, now or hereafter, incurred with or held by you [the creditor], together with interest, as and when the same become due and payable, whether by acceleration or otherwise, in accordance with the terms of any open accounts, notes, drafts, debts, obligations or liabilities or agreements evidencing any such indebtedness, obligation or liability including all renewals, extensions and modifications thereof." The instrument set forth that the undersigned (Cosby and another individual) was a debtor and granted Smyre a lien on any property of the undersigned at any time in Smyre's possession. The obligation and liability was declared to be a primary and not a secondary obligation and liability, "payable immediately upon demand without recourse first having been had by you against the Customer," or any other person, firm or corporation. However, the aggregate of principal of all indebtedness, obligations and liabilities at any time outstanding for which the undersigned would be liable was set forth not to exceed the sum of $200,000.

Thereafter, with the above instrument attached, A. M. Smyre Manufacturing Company brought an action against Delta Carpets, Inc., a subsidiary corporation, and Delta Diversified, Inc., the parent corporation, and three individual defendants (the third individual defendant having executed a separate and similar instrument), including John H. Cosby, alleging that the two corporations jointly and severally owed the plaintiff $302,057.72 for carpet yarn purchased on account which they have failed and refused to pay. In addition, judgment was sought against defendant Cosby in the amount of $200,000, based upon the instrument he had executed in favor of the plaintiff. The two corporate defendants are now involved in bankruptcy proceedings, and this proceeding has been stayed as to those defendants.

After discovery the plaintiff moved for summary judgment against the individual defendants, and based upon the willingness of the plaintiff to give the defendants their maximum setoffs as claimed as a concession, the court determined each of the defendants was liable in the amount of $179,397.93 (Cosby's agreement being "not to exceed the sum of $200,000"). The defendant Cosby appeals. *Held:*

1. In the trial court's order on the plaintiff's motion for summary judgment it separately passed upon the defenses to the motions for summary judgment raised by the defendant. The first of these was whether or not the plaintiff was required to procure a certificate of authority under Code Ann. § 22-1401 (Ga. L. 1968, pp. 565, 707; 1969, pp. 152, 201) in order to maintain the suit. In consideration of this defense the court recited that same had been

raised in the pleadings as a defense by the defendants, hence "factual issues raised . . . may be heard and determined without a jury," citing *Metric Steel Co. v. BLI Construction Co.,* 147 Ga. App. 380, 382-383 (249 SE2d 121). It is thus apparent that the trial court's ruling here was considered under Code Ann. § 81A-112 (d) (Ga. L. 1966, pp. 609, 622; 1967, pp. 226, 231; 1968, pp. 1104, 1106; 1972, pp. 689, 692, 693), as a hearing and determination before trial of the plea in abatement raised by the defendants with reference to plaintiff's admission of not having a certificate of authority to do business in Georgia as well as the consideration of the evidence on motion for summary judgment.

While reciting *Van Bergen Belfoundries v. Executive Equities, Inc.,* 139 Ga. App. 319, 320 (228 SE2d 356), and *Atlas Match Corp. v. Berry Realty Co.,* 142 Ga. App. 588 (236 SE2d 554), with reference to the corporate activities in Georgia nevertheless the court held that after receiving all the evidence with regard to the circumstances, the plaintiff's "activities are not enough to require compliance" with Code Ann. § 22-1401, supra.

Under the circumstances the evidence was conflicting with reference to the plea in abatement, the plaintiff having acknowledged that it had no certificate of authority to do business in Georgia. Yet under consideration of the defense (plea of abatement) raised by the defendants and heard and determined prior to trial, the evidence authorized the trial court's ruling even though it was not demanded by the evidence as would be the case in reviewing evidence on motion for summary judgment. The trial court did not err in holding that there was no merit in this defense. *Metric Steel Co. v. BLI Construction Co.,* 147 Ga. App. 380, 383, supra, and cases cited therein.

2. The next issue determined by the court is whether the plaintiff was barred from filing suit because it had wilfully failed to pay Georgia intangible tax on the property sold to the corporation. See Code Ann. §§ 91A-3106 and 91A-3111 (Ga. L. 1978, pp. 309, 507, 509; 1979, pp 5, 42; formerly Code Ann. §§ 92-121 and 92-125; Ga. L. 1937-38, Ex. Sess. pp. 156, 160, 161). As above, this would amount to a plea in abatement since payment in full would relieve the holder from the penalty provided in this statute. However, the failure to pay the tax would bar an action "upon the property in any court and . . . [same] may be pleaded as a complete defense to the action."

The trial court cited *Suttles v. Owens-Illinois Glass Co.,* 206 Ga. 849 (59 SE2d 392), and *Redwine v. Dan River Mills,* 207 Ga. 381 (61 SE2d 771), with reference to the right of the State of Georgia to tax accounts receivable (intangibles). The Supreme Court held with reference to nonresident businesses involving debts of a citizen of Georgia that even though the debt accrues out of or is an incident to

property owned or a business conducted by the nonresident or his agent in this state, the "plain language of the contract of sale, . . . which expressly states that title passes to the purchaser upon delivery to the carrier outside this State, is enough within itself . . ." to establish the taxability as an intangible in the nonresident's main office in the foreign state rather than being subject to taxation in Georgia. See page 853 of *Suttles,* supra. The trial court did not err in holding the plaintiff was not barred from maintaining the action without first paying intangible taxes upon the accounts receivable.

3. The next issue considered by the court was whether there was a failure of consideration as to the defendant Cosby. The court recited that the continuing guaranty executed by defendant Cosby recited that it "shall be construed in accordance with the laws of the State of North Carolina," but that neither party had submitted the North Carolina law for consideration in this case; hence the Georgia law would be applied, citing Code Ann. § 81A-143 (c) (Ga. L. 1966, pp. 609, 654; 1968, pp. 1104, 1108). The court then held and determined that under Georgia law the obligation executed by defendant Cosby guaranteeing the obligations of the defendant corporation was not a guaranty but a surety, citing Code § 103-101. This Code section seeks to distinguish guaranty and surety, in that a contract of suretyship "is one whereby a person obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor." The court then held that since defendant Cosby obligated himself as a surety "it was not necessary that he receive separate consideration for the transaction," citing *Oliver v. Citizens DeKalb Bank,* 150 Ga. App. 437, 438 (1) (258 SE2d 204). However, even if some benefit may have inured to the defendant Cosby, as guarantor, the trial court did not err in holding he was a surety. See in this connection *General Finance Corp. v. Welborn,* 98 Ga. App. 280 (105 SE2d 386), and cases cited at page 284.

The court further held that the defendant Cosby failed to give the proper notification as called for in the contract of surety ("Guaranty") which was to remain in force "until a written notice revoking it has been received." No written notice has been shown. Even though such revocation would not release the undersigned (defendant Cosby) from liability guaranteed and in existence prior thereto or "from any renewals or extensions thereof in whole or in part, whether such renewals or extensions are made before or after such revocation," it would have released him as to future indebtedness. Defendant Cosby produced no written revocation in consideration of the motion for summary judgment although he did contend that he had notified an agent of the plaintiff that he was no

longer employed or considered himself bound by the written obligation he had executed in favor of the plaintiff. "Full compliance with the contractual terms is required to effect a valid revocation, . . . *Browning v. Nat. Bank of Ga.,* 143 Ga. App. 278 (238 SE2d 275)." *Rambo v. Cobb Bank &c. Co.,* 146 Ga. App. 204, 205 (2) (245 SE2d 888).

4. The next issue considered by the trial court in consideration of the motion for summary judgment was whether or not there was an issue of fact as to the identity of the debtor with respect to defendant Cosby who had executed the guaranty (surety) obligation in favor of Delta Carpets, Inc., as the customer. The court then held that the facts of the case show that even though orders for goods were placed with the plaintiff in the names of " 'Delta Carpets,' " " 'Delta Diversified, Inc.,' " and " 'Delta Carpets, Inc.,' " that Delta Carpets, Inc., received the shipments. The trial court then held that the plaintiff having carried its burden of proof that Delta Carpets, Inc., was the debtor, and the defendants had presented no evidence contra and none could be found in the record to form any other conclusion, the goods shipped had been received by Delta Carpets, Inc., and defendant Cosby had obligated himself for same. In support of this ruling the court cited *Cook v. Van Deren Hardware, Inc.,* 129 Ga. App. 768 (201 SE2d 328), although that case was not one involving summary judgment but one involving an action on account in which the trial court was the trier of fact. Nevertheless, no evidence has been submitted to controvert the evidence presented by the plaintiff.

5. The obligation recited that same was "joint and several," hence the defendant's liability under the instrument was joint and several, and the plaintiff was not required to exhaust its remedies against the defunct corporation now in bankruptcy before instituting suit against this defendant. See *Rambo v. Cobb Bank &c. Co.,* 146 Ga. App. 204 (1), 205 (4), supra.

6. The next issue considered by the trial court was that of the defendant's claim or defense of fraud in that there was an alleged oral promise that another person would sign the document. The court held "[p]arol evidence is not admissible to vary the terms of a binding written agreement, even to establish fraud," and cited *Rambo v. Cobb Bank &c. Co.,* 146 Ga. App. 204, 205, supra, wherein we find the following: "As a matter of law, fraud cannot be predicated on statements which are promissory in their nature as to future acts." See also *First Nat. Bank &c. Co. v. Thompson,* 240 Ga. 494 (241 SE2d 253). Consequently, as therein held, no issue of fact on the defense of fraud in the inducement exists for jury determination.

For the same reason the defense of increased risk because the plaintiff breached an oral agreement to require another party to sign

the guaranty agreement is without merit inasmuch as oral promises cannot vary the terms of the written agreement. Further, promises as to future events are not fraud. We also add that if any of the defendants have to pay off the entire sum guaranteed by the obligation that defendant may be entitled to a contribution from the other guarantor. The trial court did not err in holding the contribution from the other guarantors has not been impaired nor has the risk been increased.

7. The statute of limitation on the account or contract had not run when suit had been filed. The doctrine of laches is an equitable one and has no relevancy to the action here since the rights to be enforced were upon legal grounds, and the statute of limitation had not run. See *Moore v. American Finance System,* 236 Ga. 610, 611 (3) (225 SE2d 17); *Addis v. Smith,* 226 Ga. 894 (1), 895 (178 SE2d 191). A delay which was not beyond the statute of limitation could not be held to be laches sufficient to bar the action. See *Clover Realty Co. v. J. L. Todd Auction Co.,* 240 Ga. 124, 126 (4) (239 SE2d 682). The trial court did not err in holding the defense of laches was not meritorious.

8. With reference to the defense of setoff, the plaintiff, based upon the discovery, made a concession that the trial court should write off the maximum setoffs claimed, thereby reducing the amount sought by $122,759.79, leaving an amount for which defendant Cosby was held to be liable for $179,397.93. Apparently, this figure was determined by subtracting the acknowledged setoff of $122,759.79 from $302,057.72 (albeit with some mathematical error), the figure for which the plaintiff was suing and which was calculated by adding interest to the outstanding debt, as shown by the invoices in the amount of $272,124.72. These figures also reflect the application of a rate of interest greater than the current legal rate of interest of seven per centum per annum. See Code Ann. § 57-101 (Ga. L. 1975, p. 370; 1979, pp. 355, 356). In the absence of a specification in writing, a higher rate of interest may not be collected by plaintiff. Except as to the mathematical calculations, in particular as to the incorrect rate of interest, we find no error in the trial court's grant of summary judgment against the defendants jointly and severally. We therefore affirm the grant of summary judgment in favor of plaintiff on condition that plaintiff write off that portion of the judgment of the trial court which reflects interest in excess of the legal rate; otherwise it is reversed.

*Judgment affirmed on condition. Quillian, C. J., and Pope, J., concur.*

DECIDED MAY 20, 1981.

*Randall L. Hughes, Kim H. Roeder,* for appellant.
*Leon L. Rice III, Kirk Keene,* for appellee.