## 39932. TIDWELL v. CARROLL BUILDERS, INC. et al.

WELTNER, Justice.
On October 7, 1966, Carroll Builders, Inc. and Charles E. Tidwell entered into an agreement providing that Carroll would construct for Tidwell a residence according to certain plans and specifications, and "without the usual and customary builder's fee and profit connected with said construction." Instead, the parties agreed that "at such time as [Tidwell] shall convey fee simple title to said premises to any third party" he would pay to Carroll "a sum which shall be equivalent to one-half of the net proceeds derived from the sale of said premises." There followed a means of determining the exact amount of "net proceeds," along with this additional provision: "It is the intent of this agreement that as a part of the consideration for the construction of said residential structure by [Carroll] for [Tidwell],

without the usual and customary builder's fee and profit, that [Tidwell] will share 50% of the profit, if any, realized by [Tidwell] from the subsequent sale of said premises to a third party."

Thereafter, the dwelling was constructed and occupied by Tidwell and his wife until they separated, whereupon Mrs. Tidwell continued to occupy the residence.

On December 9, 1981, Tidwell conveyed by quitclaim deed his interest in the residence to his wife, and Carroll thereafter filed a complaint against Tidwell and his wife seeking a recovery under the agreement of $66,500 plus interest and costs, along with a declaratory judgment establishing an equitable lien upon the property.

Tidwell filed to the complaint a motion for summary judgment, contending that the transfer to his wife was a gift which vitiated any obligation under the agreement of 1966.

In response to the motion, Carroll, through its principal officer, filed an affidavit, the substance of which is as follows: "It was the intent of CBI . . . to forego a portion of its customary builder's fee and profit for construction of the home provided that when the property was conveyed to a third party by Mr. Tidwell, CBI would receive one-half of the profit from the transaction . . . It was never the intent of CBI to authorize or otherwise empower Mr. Tidwell to convey the property in any manner which would deprive CBI of the profit for which it had contracted and for which it had foregone a portion of its customary builder's fee and profit at the time construction of the home on the property was completed. . . ." The record also contains this further affidavit of Carroll: "In 1966, CBI was in the business of building and selling single-family residences. At that time I knew Charles E. and Nancy Norwood Tidwell socially and our children were close friends.

"During the course of our friendship, Mr. Tidwell told me that he would like to purchase a home in the Breckenridge Subdivision where CBI was then building. He further told me that he did not have enough money for a down payment toward such a home.

"Out of friendship and my desire to see Mr. Tidwell and his family occupy a home in Breckenridge, I proposed to him that CBI build him a home, but defer its customary builder's profit until some later time. This .would enable Mr. Tidwell to finance the entire amount of the purchase price of the home.

"We agreed in principle that the profit would be realized when Mr. Tidwell conveyed the home to a third party."

The trial court denied Tidwell's motion for summary judgment, and he appeals, alleging that denial to be error, along with the consideration by the trial court of the foregoing affidavits relative to the intent of the parties.

The initial inquiry in this appeal is two-fold — whether the agreement is ambiguous and thus capable of interpretation by parol, and whether any such ambiguity is to be resolved by a court or by a jury.

1. The agreement is ambiguous in that Carroll's entitlement comes about according to one portion of the agreement "at such time as [Tidwell] shall convey fee simple title to said premises to any third party . . . ," and, at another place, upon "the subsequent sale of said premises to a third party." Thus it speaks both in the language of conveyance of title to a third party, and of sale to a third party.

Without doubt, Tidwell has conveyed title to his wife. Equally without doubt, there has been no "sale" of the premises. (Tidwell's affidavit to the effect that there was no consideration for the transfer of the property to his wife; that it was a gift; that he and his wife did not thereby accomplish the discharge of any marital obligation, is undisputed, and supported by his wife's deposition.)

"Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved and, if there is an ambiguity, latent or patent, it may be explained." OCGA § 13-2-2 (Code Ann. § 20-704).

The trial court did not err in receiving affidavits which sought to illuminate the intention of the parties at the time of the agreement.

2. The second issue is whether or not construction of the contract is to be accomplished by the court or by a jury.

"The construction of a contract is a question of law for the court. Where any matter of fact is involved, the jury should find the fact." OCGA § 13-2-1 (Code Ann. § 20-701).

This inquiry is reduced to the question as to whether or not the evidentiary materials along with the pleadings create a factual issue. We resolve that inquiry in the negative.

The contract, even with its ambiguity, plainly shows that Carroll is to be compensated at some point in the future. Tidwell contends that his gift of the property to his wife defeats Carroll's entitlement, and Carroll contends that it was never the intention that Tidwell might in any way convey the property so as to destroy its interest. These contentions must be resolved as matters of law, as we discern no factual dispute. That is not surprising, as the circumstances of this case, involving the separation and the conveyance of Tidwell's interest to his wife were not reasonably foreseeable as far back as 1966, and the silence of the contract as to such possibility is unremarkable. Indeed, what further evidence could there be? It is beyond reasonable expectation that these parties, being good friends, would have enunciated any express agreement relative to what has now transpired. And what *factual* disputes are there for a jury to

decide? None.

There being no issue of fact, the interpretation of the contract, and a declaration of the rights of the parties, must be accomplished by the court without the intervention of a jury. *Indian Trail Village, Inc. v. Smith,* 152 Ga. App. 301 (262 SE2d 581) (1979).

3. While the case might be returned to the trial judge with instructions to fix the rights of the parties based upon the pleadings and the evidentiary materials before it, a strong likelihood for further appeal suggests that judicial economy will be served by the conclusion of the controversy now.

Accordingly, we determine that under the terms of the contract, as amplified by parol, there has been no event which gives rise to a present entitlement of Carroll to receive any sum of money from Tidwell or from his wife. We arrive at this conclusion based upon Carroll's own affidavit that the original desire was "to see Mr. Tidwell and his family occupy a home in Breckenridge." That circumstance yet partially pertains, and to that extent, the transfer by Tidwell of his interest to his wife is not a conveyance of title to a "third party." Hence, we must reject Carroll's contention that it is now entitled to a sum of money calculated upon a theoretical sales price.

We reject, alike, Tidwell's contention that the transfer of the property to his wife without a substantial monetary consideration serves to destroy Carroll's contractual rights. Nothing in the contract so specifies, and, indeed, such a result would be untoward. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4) (Code Ann. § 20-704).

4. What, then, is Carroll's entitlement? While the contract has unusual features, it is, at base, nothing more than a contract for the sale of realty with a conditional payment deferred.

Specifically, Carroll's entitlement is to receive from the proceeds of the transfer of the premises at such time as it leaves the ownership of both Tidwell and his wife (by voluntary or involuntary transfer) a sum of money which shall constitute one-half of the net proceeds from the transfer of the property *if* it be transferred at fair market value. If transfer be other than an arm's length transaction, or by descent or devise, Carroll shall be entitled then to its share calculated upon the fair market value of the property at such a time.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Clarke, J., who dissents, and Hill, C. J., disqualified.*

DECIDED SEPTEMBER 8, 1983.

*McCauley, Owen & Sweeney, Timothy J. Sweeney,* for appellant.

*Edward E. Carter, David H. Robertson,* for appellees.

CLARKE, Justice, dissenting.

In my view, the terms of the contract are clear and unambiguous, needing no clarification by extraneous evidence. The contract refers to "at such time" as the property is conveyed to a third party and provides for a fifty percent division of profits *"if any"* (emphasis added). I believe this language simply means that neither of the parties was to make a profit from the construction or ownership of the house and that if Tidwell ever made a profit by the sale to a third party, the profit would be equally shared by Tidwell and Carroll. Since no profit was realized when the deed was made, I would hold that Tidwell is entitled to summary judgment.