74751, 74752. CITICORP INDUSTRIAL CREDIT, INC.
v. ROUNTREE et al.; and vice versa.
(364 SE2d 65)

CARLEY, Judge.

Lee Rountree and James Martin, appellee-plaintiffs in Case No. 74751, are business partners who originally entered into a written agreement to buy certain computer equipment from Shell Group, Inc. (hereinafter referred to as Shell). The sales representative of Shell who conducted the negotiations with appellees was Becky Lemley. After signing the purchase agreement negotiated with Lemley, appellees began to make regular payments to Shell for the computer equip-

ment. However, two weeks after delivery of the computer equipment, Lemley contacted appellees to advise them that she had found a way whereby their monthly payments for the computer equipment could be lowered. Lemley thereafter presented appellees with a copy of a lease agreement and an indemnification agreement. Lemley stated that "nothing would change" if appellees signed these agreements. To the contrary, however, the new documents would significantly change the nature of the underlying transaction from a sale to a lease of the computer equipment. Moreover, the new documents named Citicorp Industrial Credit, Inc., appellant-defendant in Case No. 74751, rather than Shell, as the lessor of the equipment. With regard to repairs and servicing, the lease agreement provided that appellees, at their "own cost and expense, [would] keep all equipment in good repair, condition and working order and [would] furnish all parts, and servicing required thereof." The lease agreement also provided that appellees were "entitled to the benefit of any manufacturer's warranties on the equipment to the extent permitted by applicable law."

Appellees simply signed the new agreements and did not read them prior to signing. For some time thereafter, appellees submitted to appellant the regular monthly rental payments required by the lease agreement. Whenever the computer equipment did not operate properly, appellees notified both Shell and appellant. However, neither Shell nor appellant provided any repair service. Thus, appellees were forced, at their own expense, to contract with independent service companies for the repair of the equipment.

Appellees eventually refused to make any further rental payments to appellant and demanded that the lease be terminated. Appellant refused appellees' demands and, when timely payment from appellees was not forthcoming, appellant filed this suit, seeking to recover for appellees' alleged breach of the lease agreement. Appellees answered, asserting numerous defenses. Appellees also filed a counterclaim for the recovery of all payments that they had previously made to appellant under the lease agreement and of all expenses that they had incurred for the repair of the equipment. The case came on for a jury trial. At the close of all of the evidence, appellant moved for a directed verdict as to both its claim against appellees and appellees' counterclaim against it. The trial court denied appellant's motion and the case was submitted to the jury. As to appellant's main claim, the jury returned a verdict in favor of appellees. As to the counterclaim, the jury also returned a verdict in favor of appellees, but awarded no damages. The trial court entered judgments on the jury's verdicts and, in Case No. 74751, appellant appeals from those judgments. In Case No. 74752, appellees cross-appeal from the judgment entered on the jury verdict which awarded them no damages on their counterclaim.

At the outset, we note that the parties were in agreement at trial that the construction of the lease would be in accordance with and governed by the laws of the State of New York. "However, the record shows that the law of [New York] was not proved. Under such circumstances, it will be presumed that the law of [Georgia] obtains, and we will apply the law of this State. . . . [Cits.]" *Crisp v. McGill*, 229 Ga. 389, 390 (1) (191 SE2d 836) (1972).

*Case No. 74751*

1. Appellant enumerates as error the trial court's failure to grant a directed verdict as to its main claim against appellees for breach of the lease agreement. It is undisputed that appellees signed the lease agreement which named appellant as the lessor of the equipment, that the equipment specified in the lease was provided to appellees, and that, contrary to the terms of the lease agreement, appellees stopped making payments to appellant. Therefore, the issue presented for resolution is whether appellees produced sufficient evidence to create a jury question as to the existence of any viable defense to their obligation to appellant under the lease agreement. If they did, the trial court did not err in denying appellant's motion for a directed verdict. If appellees did not produce such evidence, the trial court erred in failing to grant a directed verdict in favor of appellant.

Appellees first contend that Lemley was an agent of appellant and that, as her principal, appellant is bound by any representations made by her. Appellees further assert that, insofar as they were fraudulently induced into entering the lease agreement by the misrepresentations of Lemley that "nothing would change" thereby, they have the right to rescind the lease agreement and are not bound by its terms. It would appear that Lemley was acting as an agent for appellant in negotiating the underlying lease transaction. See generally *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883 (354 SE2d 210) (1987). However, appellees cannot rescind the lease agreement which they signed after those negotiations. A simple reading of the lease agreement would have shown to appellees the magnitude of the change which would be effected thereby. " '(W)here one who can read signs a contract without apprising himself of its contents, otherwise than by accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defeat an action based on it, or have it canceled or reformed, on the ground that it does not contain the contract actually made, unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpe-

trated by the opposite party, amounting to actual fraud such as would reasonably prevent him from reading it. [Cits.]' [Cits.]" *Conklin v. Liberty Mut. Ins. Co.*, 240 Ga. 58, 59-60 (239 SE2d 381) (1977). It is undisputed that appellees are experienced businessmen who are able to read. There is no evidence that Lemley was acting as an agent of appellees or that she employed any artifice to prevent them from reading the agreements. The fact that appellees deemed themselves too busy to read the lease and indemnification agreements prior to signing them will not authorize them to avoid their obligations to appellant thereunder. See *W. P. Brown & Sons Lumber Co. v. Echols*, 200 Ga. 284, 287 (36 SE2d 762) (1946). Therefore, contrary to their first contention, appellees cannot rescind the lease agreement on the basis of alleged fraudulent inducement.

Appellees further urge that the Uniform Commercial Code (UCC) would apply to the underlying transaction and provide them with certain remedies or defenses as against appellant. The contention is that the lease of the computer equipment was the equivalent of a sale and that the transaction is thus within the ambit of OCGA § 11-2-101 et seq. However, it is clear that the lease is not equivalent to a sale by appellant and a purchase by appellees of the computer equipment. The lease provided for 60 monthly payments of $711.22. Title to the equipment was at all times to remain in appellant. The lease contained no provision which required or even permitted appellees to purchase the equipment at the end of the lease. Instead, the agreement provided that the equipment was to be returned to appellant at the end of lease. "Nowhere therein can it be construed that the parties contemplated a sale, an option to purchase, or creation of a security interest. [Cits.] Thus, [OCGA § 11-2-101 et seq.] does not apply and the parties' conduct is governed by the terms of the lease. . . ." *McGuire v. Assoc. Capital Svcs. Corp.*, 133 Ga. App. 408, 411 (210 SE2d 862) (1974).

Appellees also contend that their lease of the equipment from appellant should not be considered as an entirely separate transaction, but as a continuation of the initial sales transaction between themselves and Shell. Thus, they urge that the two separate contracts should be construed together so as to evince a single sales transaction governed by the UCC. However, by signing the subsequent lease agreement with appellant, appellees, in effect, agreed to the rescission of their original agreement to buy the equipment from Shell and Shell, in apparent reliance thereon, then sold the equipment to appellant. Appellant never assented to the terms of the original rescinded sales contract between appellees and Shell. A contract is an agreement between two parties to do or not do some specified thing. OCGA § 13-1-1. Appellant cannot be bound by the terms of a contract to which it was never a party. It follows that the sales contract and the

lease agreement are separate and complete contracts. "[N]o construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation." *R. S. Helms, Inc. v. GST Dev. Co.*, 135 Ga. App. 845, 848 (219 SE2d 458) (1975). It follows that the UCC does not apply to the lease contract and, therefore, appellees have no remedy or defense under its provisions.

Appellees urge that, notwithstanding their default, appellant's failure to mitigate damages provides them with a defense to liability. Insofar as this case concerns a lease rather than a sale, the parties' conduct is governed by the terms of the lease which specifically provide that appellant was not required to sell or release the equipment for the benefit of appellees. See *Capital Assoc. v. Zabel*, 172 Ga. App. 19 (1) (322 SE2d 67) (1984). Accordingly, appellant's failure to mitigate its damages by the resale or release of the equipment affords appellees no viable defense.

Appellees further urge that there was a failure of consideration in that the computer equipment did not function properly. However, there was no evidence presented at trial to show that appellant had ever made a warranty as to the repair of the equipment. The lease signed by appellees provided that they, at their "own cost and expense, shall keep all Equipment in good repair, condition and working order and shall furnish all parts, and servicing required thereof . . . In the event that any item of Equipment shall become . . . damaged beyond repair for any reason . . . [appellees] shall promptly pay to [appellant] the installments of rent then remaining unpaid hereunder for such item. . . ." The contemporaneous indemnification agreement which appellees signed also provided that: "[A]ll of the equipment described in the above Agreement(s) has been delivered to and received by the undersigned; that all installation or other work necessary prior to the use thereof has been completed; that said equipment has been examined and/or tested and is in good operating order and condition and is in all respects satisfactory to the undersigned and as represented, and that said equipment has been accepted by the undersigned and complies with all terms of the above Agreements. . . . In the future, in the event that said equipment fails to perform as expected or represented we will continue to honor the above Agreement(s) by continuing to make our monthly payments in the normal course of business and we will look solely to the seller or manufacturer for the performance of all covenants and warranties. In addition, we indemnify [appellant] and hold [it] harmless from any nonperformance of the aforementioned equipment. We acknowledge that [appellant] is neither the manufacturer, distributor or seller of the equipment and has no control, knowledge or familiarity with the condition, capacity, functioning or other characteristics of the equip-

ment." Thus, appellant agreed *only* to provide the computer equipment to appellees. In return, appellees agreed to make repairs to the equipment and to make monthly payments to appellant under the lease, which payments were lower than those which would have been made to Shell under the original purchase money sales agreement. Under the evidence, failure of consideration may have been a proper defense as against Shell, the original vendor, but not as against appellant, the subsequent lessor. See *Petroziello v. U. S. Leasing Corp.*, 176 Ga. App. 858, 860 (338 SE2d 63) (1985). See also *U. S. Leasing Corp. v. Jones Pharmacy*, 144 Ga. App. 26 (240 SE2d 300) (1977).

A motion for directed verdict is to be granted when "there is no genuine issue of material fact to be resolved by the trior of the facts, and that the movant is entitled to judgment on the law applicable to the established facts. [Cits.]" *Standard Accident Ins. Co. v. Ingalls Iron Works Co.*, 109 Ga. App. 574, 575 (136 SE2d 505) (1964). In this case, it is clear that there existed no questions of fact to be resolved by the jury as to appellees' defenses and that appellant should have been granted a directed verdict as to its main claim. It follows that the trial court erred in failing to direct a verdict in favor of appellant on its main claim.

2. Appellant enumerates as error the trial court's failure to enter a directed verdict in its favor as to appellees' counterclaim.

In their counterclaim, appellees had sought to recover for appellant's failure to repair the equipment and for appellant's breach of express and implied warranties. OCGA § 44-12-63 provides that a bailor, such as appellant, is obligated to keep the bailed item in suitable order and repair for the purposes of the bailment and to warrant that it is free from any secret fault rendering it unfit for the purpose for which it is hired. However, "parties are free to contract and may by express agreement enlarge, abridge, qualify, or supersede obligations that otherwise would arise from the bailment by implication of law — so long as the contract does not violate statutory law or contravene public policy — and, so long as such restrictions are expressed in clear and unambiguous language. [Cits.]" *Hall v. Skate Escape, Ltd.*, 171 Ga. App. 178, 179 (319 SE2d 67) (1984). As discussed previously, the lease agreement here provided that the obligation of repairs was upon appellees and not appellant. The agreement also expressly stated that appellees "acknowledge[d] that [they had] made the selection of each item of Equipment based upon [their] own judgment and expressly disclaim[ed] any reliance upon statements made by [appellant]. *[APPELLANT] MAKES NO EXPRESS OR IMPLIED WARRANTIES INCLUDING THOSE OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE WITH RESPECT TO THE EQUIPMENT AND HEREBY DISCLAIMS THE SAME.* [Appellant] agrees that [appellees] shall be entitled to the benefit of any

manufacturer's Warranties on the Equipment to the extent permitted by applicable law." "The provisions of this lease are not prohibited by law or public policy, as no injury to the public interest clearly appears." *Petroziello v. U. S. Leasing Corp.*, supra at 860. It is clear that by the plain and unambiguous language of the disclaimers, appellees renounced the statutory warranties of OCGA § 44-12-63 when they signed the lease contract. Thus, as a matter of law, appellees have no viable claim for the breach of those warranties. It follows that the trial court erred in failing to direct a verdict in favor of appellant as to appellees' counterclaim.

### Case No. 74752

3. Appellees cross-appeal from the judgment entered on the jury's verdict as to their counterclaim. As we have held in Division 2, the trial court did err as to appellees' counterclaim but that error was in failing to direct a verdict in favor of appellant. Thus, appellees' cross-appeal is moot.

*Judgments reversed in Case No. 74751. Appeal dismissed in Case No. 74752. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 23, 1987 —
REHEARING DENIED DECEMBER 18, 1987 —

*James P. Smith*, for appellant.
*Stephen E. Farish*, for appellees.