A89A0444. SOUTH ATLANTA ASSOCIATES, LTD. v. STRELZIK et al.
(385 SE2d 439)

SOGNIER, Judge.

South Atlanta Associates, Ltd. (SAA) brought suit against Steven Strelzik pursuant to an agreement in which Strelzik guaranteed payment of sums due SAA under a lease agreement between it and Housecall, Inc., the company in which Strelzik was president. Strelzik brought a third party suit against Daniel Shefte, a cosigner of the guaranty, and the trial court allowed SAA to add Shefte as a party defendant. The trial court then granted summary judgment solely to Strelzik and denied SAA's motion for summary judgment. This appeal ensued.

Appellant contends the trial court erred by granting summary judgment in favor of appellee Strelzik and denying its motion for summary judgment as to both Strelzik and Shefte because as a matter of law the guaranty agreement executed by appellees entitled appellant to recover from them the sums due it from Housecall. The record reveals that appellant tendered a contract to Housecall consisting of a lease agreement and, as referenced in paragraph 38 of the lease, a guaranty agreement which required the sole signature of Housecall's president, appellee Strelzik. While the lease agreement in its original form was accepted and executed by the parties, appellant's guaranty agreement was rejected and a modified guaranty agreement was presented to appellant, which plainly and unambiguously required the signature as guarantor not only of Strelzik, but also of appellee Shefte and Richard Midlick. However, when the guaranty agreement was proffered to appellant, only Strelzik and Shefte had signed the document. The evidence is uncontroverted that appellant accepted

the modified guaranty agreement in satisfaction of paragraph 38 of the lease agreement and Housecall was allowed to enter into the leased space. Upon Housecall initiating bankruptcy proceedings, appellant then sought to enforce the guaranty agreement as to both Strelzik and Shefte.

1. We find no error in the trial court's denial of appellant's motion for summary judgment because contrary to appellant's argument, we do not agree that the contract agreed upon by the parties required only the one signature of Strelzik to bind the parties. Appellant tendered a lease agreement which, in paragraph 38, provided that the lease would be effective only upon execution both of the lease "*and* upon the execution of the Guaranty Agreement annexed hereto by Steven J. Strelzik." (Emphasis supplied.) It is uncontroverted that the annexed guaranty agreement tendered by appellant was not accepted, but instead the contract (which by the express terms of the lease consisted of both the lease agreement and the guaranty agreement) was "accepted" with terms varying from the original offer, namely, with a three signature guaranty agreement rather than the one signature guaranty presented by appellant. This "acceptance" operated as a matter of law as a rejection of appellant's original offer and constituted a counteroffer, see *Duval & Co. v. Malcom*, 233 Ga. 784, 787 (214 SE2d 356) (1975), which appellant thereafter uncontrovertedly accepted. Thus, whatever the original intention of the parties when entering into the initial negotiations, the contract between the parties did not consist of the lease agreement with a *one* signature guaranty, as asserted by appellant and the dissent to this division, because that offer was uncontrovertedly rejected when the counteroffer with different terms was made. Rather, the contract consists of the lease agreement with a *three* signature guaranty which appellant undisputedly accepted. Accordingly, the terms of the original offer never became the basis of any contract between the parties and its terms cannot now be reinstated by this court and imposed upon the parties since the terms of the original offer have been superseded and are controlled by the terms of the contract actually executed by the parties.

Where the language employed by parties to a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction of the contract is required to ascertain the intention of the parties. See generally *Citicorp Indus. Credit v. Rountree*, 185 Ga. App. 417, 421 (364 SE2d 65) (1987). Therefore, because the record here uncontrovertedly establishes that the contract accepted by appellant required three signatures on the guaranty agreement, appellant is bound by those terms, not by the rejected terms of the original offer, and the trial court did not err by denying appellant's motion for summary judgment.,

2. The trial court did err by granting Strelzik's motion for summary judgment because a question of fact exists whether a valid contract was created between the parties. At the time of the drafting of that guaranty agreement which became part of the contract between the parties here, see Division 1, it is clear the drawers intended there be three signatures on the guaranty. The record contains no affidavits, depositions, or other sworn evidence by Strelzik or Shefte to indicate whether their intent in executing the guaranty was anything other than the expressed intent set forth in the document, that there be three guarantors of the lease agreement. However, the absence of the third required signature on the guaranty agreement did not necessarily render that document incomplete and thus unenforceable, as asserted by the dissent to this division. Although the record fails to disclose when Strelzik or Shefte signed the document, the record does contain uncontroverted affidavits by Melissa Barre (the employee charged with monitoring tenant compliance with the terms of appellant's lease agreements) that she received the guaranty agreement *from Strelzik*. This evidence raises the inference that Strelzik, at least, knew or should have known when he tendered the document to appellant that Midlick's signature thereon was missing. A conflict thus exists between the plain and unambiguous language of the guaranty agreement and Strelzik's subsequent action in forwarding to appellant in satisfaction of paragraph 38 of the lease agreement a guaranty document containing only two of the three required signatures.

While aware that "[t]he contract of suretyship is one of strict law; and the surety's liability will not be extended by implication or interpretation," OCGA § 10-7-3, the law also acknowledges that alteration of a surety's liability does not extinguish that liability where it is done with the surety's knowledge and consent. See OCGA § 10-7-21; see generally *Washington Loan &c. Co. v. Holliday*, 26 Ga. App. 792 (a) (107 SE 370) (1921); *Bank of Terrell v. Webb*, 177 Ga. App. 715-716 (341 SE2d 258) (1986). In view of the evidence that Strelzik forwarded the guaranty agreement with its two signatures to appellant, evidence which conflicts both with the language of the guaranty agreement and the fact found by the trial court that Strelzik and Shefte thought that there would be three guarantors to the agreement, a question exists for the trier of fact to determine whether Strelzik consented to, if not initiated, the alteration of the terms of the guaranty agreement, or whether the parties mutually departed from or waived the contractual provision requiring three signatures. See generally *Union &c. Leasing Corp. v. Beef 'N Burgundy*, 155 Ga. App. 257, 261 (270 SE2d 696) (1980); *Mauldin v. Lowe's of Macon*, 146 Ga. App. 539, 542 (246 SE2d 726) (1978); *California Fed. Savings &c. Assn. v. Hudson*, 185 Ga. App. 384, 388 (4) (364 SE2d 582) (1987).

In summary, we hold in Division 2 that the trial court erred by

granting summary judgment in favor of Strelzik, but hold in Division 1 that the trial court did not err by denying appellant's motion for summary judgment as to Strelzik and Shefte. Therefore, the judgment is affirmed in part and reversed in part.

*Judgment affirmed in part and reversed in part. Deen, P. J., Birdsong and Pope, JJ., concur. Carley, C. J., McMurray, P. J., Banke, P. J., Benham and Beasley, JJ., concur in part and dissent in part.*

McMurray, Presiding Judge, concurring in part and dissenting in part.

Plaintiff South Atlanta Associates, Ltd., entered into a contract whereby it leased certain premises to Housecall, Inc. Plaintiff's action is predicated upon a contemporaneously dated guaranty agreement wherein the guarantors agreed to be jointly, severally and primarily obligated to plaintiff for all amounts owed by Housecall, Inc., under the lease.

Plaintiff's complaint, as amended, seeks a judgment against two of the three guarantors named in the agreement, defendant Strelzik and defendant Shefte. Both of the defendants executed the guaranty agreement. A third guarantor, Midlick, also named in the body of the guaranty agreement, did not sign the guaranty agreement and the signature line subscribed with his name remains blank.

Upon consideration of plaintiff's motion for summary judgment the state court granted a summary judgment in favor of defendant Strelzik. The state court found, "that a right of contribution existed between the guarantors as a result of the guarantors entering into the guaranty to the lease agreement. OCGA § 51-12-32. The fact that the two guarantors that ultimately signed the guaranty (Strelzik and Shefte) thought that there would be three guarantors to this agreement has convinced this Court that their exposure to risk was increased as a result of the Plaintiff's inability to get the guaranty of Mr. Midlick. This increased risk, therefore, acts as a ground for discharge of the other guarantors. OCGA § 10-7-22." Plaintiff appeals from the grant of summary judgment in favor of defendant Strelzik and the denial of its motion for summary judgment.

Both plaintiff's enumerations of error and argument are couched in language responsive to the state court's reliance on OCGA § 10-7-22. That statute relates to release of a guarantor whose risks are increased by the creditor. I do not view OCGA § 10-7-22 as controlling in the case sub judice since there was never a binding guaranty agreement.

While the state court's citations of authority were not apropos, the underlying reasoning was sound, and the state court's conclusion correct. Although I concur in the judgment as to Division 1, I respect-

fully dissent as to Division 2 of the majority opinion since I would hold that Strelzik is entitled to summary judgment because the absence of the third required signature on the guaranty agreement rendered that document incomplete and thus not a valid and binding contract. I cannot agree with the conclusion of the majority that the delivery by Strelzik of the incomplete and thus unenforceable guaranty agreement somehow breathed life into that document. Thus, there can be no question of fact remaining as to whether Strelzik consented to an alteration of the guaranty agreement since that document was never a binding contract.

"When the intent is manifest that the contract is to be executed by others than those who actually sign it, it is inchoate and incomplete, and does not take effect as a valid and binding contract. [Cits.]" *Peacock v. Horne,* 159 Ga. 707, 722 (2), 723 (126 SE 813). In the case sub judice, the intent that the guaranty be executed by all three of the guarantors named therein is manifested by the form of the document and by each guarantor's loss of remedy by way of contribution where the third named guarantor failed to execute the document. *Peacock v. Horne,* 159 Ga. 707, 722 (2), 723, supra. See also OCGA §§ 10-7-50 and 13-3-2. " ' "In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and therefore, no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement." (Cit.)' *Aero Constr. Co. v. Grizzard,* 76 Ga. App. 649, 652 (2) (46 SE2d 767) (1948)." *Christensen v. Roberds of Atlanta,* 189 Ga. App. 289, 291 (2) (375 SE2d 267).

In the case sub judice, specific individuals are identified as parties to the guaranty contract and the form of the guaranty contract anticipates the signatures of all of the identified guarantors. Where less than all the anticipated guarantors have signed the document there is no contract since there has been no meeting of the minds. In other words, each signatory anticipates that all guarantors will sign and agree to bear a level of risk predicated on this assumption. Of course, as a given number of guarantors is reduced the level of risk to each remaining guarantor is increased. Therefore, if less than all anticipated guarantors sign, the level of risk to which each signatory would be exposed is greater than that which they have agreed to bear. Therefore, due to the absence of Midlick's signature, there was no meeting of the minds concerning the terms of the guaranty agreement. See generally OCGA § 10-7-50.

"This case does not come within that class of cases wherein it is held that a party who signs and delivers an instrument is bound by

the obligations it contains, although it is not executed by all the parties for whose signatures it was prepared, where there is nothing to indicate an intention on the part of him who signs not to be bound thereby until it is signed by others, which intention is brought home to the obligee therein, and where there is no express agreement or manifest intent to such effect, and *where there is no loss of remedy by way of indemnity or contribution,* by failure of other parties to execute the instrument." (Emphasis supplied.) *Peacock v. Horne,* 159 Ga. 707, 722 (2), 723, supra.

*Cosby v. A. M. Smyre Mfg. Co.,* 158 Ga. App. 587, 591 (6), 592 (281 SE2d 332), and *Residential Indus. Loan Co. v. Brown,* 559 F2d 438 (5th Cir.), cited by plaintiff, may be distinguished on the facts. *Cosby v. A. M. Smyre Mfg. Co.,* supra, involves an unsuccessful defense of fraud predicated upon an oral promise as to a future event. *Residential Indus. Loan Co. v. Brown,* supra, turned on the conclusion that the failure of a party to insure the genuineness of a coguarantor's signature did not constitute a release under OCGA § 11-3-606 (1) (Uniform Commercial Code).

Defendant Strelzik's preparation of the revised guaranty and the existence of defendant Strelzik's obligation under the lease agreement to execute an individual guaranty of the lease may supply authority for a construction of the guaranty agreement in favor of plaintiff. See generally OCGA § 13-2-2 (5). However, there is no authority to rewrite the agreement contained in the guaranty contract under the guise of construction of that document. The guaranty agreement as revised by Strelzik anticipates clearly upon its face the signatures of all three named guarantors. No reasonable construction can obliterate this fact. Therefore, in the absence of the signatures of all of the guarantors named in the revised guaranty agreement the document remains incomplete. This does not suggest that plaintiff was under any duty to obtain Midlick's signature, only that plaintiff failed to recognize the incomplete nature of the document it received from defendant Strelzik so as to prompt remedial measures.

I am authorized to state that Presiding Judge Banke and Judge Benham join in this opinion.

CARLEY, Chief Judge, concurring in part and dissenting in part.

Insofar as the majority holds in Division 2 that summary judgment was erroneously granted in favor of appellee-defendant Strelzik, I concur in the judgment. However, insofar as the majority holds in Division 1 that appellant-plaintiff's motion for summary judgment was correctly denied, I must respectfully dissent.

The following undisputed facts are, in my opinion, material to the disposition of this appeal: Appellee Strelzik is the president of Housecall, Inc. After negotiations, Housecall, Inc., agreed to lease

premises from appellant. Appellant sent a copy of a lease agreement and a copy of a guaranty agreement for execution by appellee Strelzik. The lease agreement specified that it would become effective only upon appellee Strelzik's execution of the guaranty agreement. The copy of the lease agreement which had been submitted by appellant was executed and returned to it. However, the guaranty agreement which was returned with the executed lease agreement was not that copy which had been submitted to appellee Strelzik by appellant. Instead, appellee Strelzik returned to appellant a guaranty agreement which he himself had drafted. This agreement named three guarantors: appellee Strelzik; appellee-defendant Shefte; and Richard S. Midlick. Only the signatures of the two appellees appeared on the guaranty agreement, however.

Under these circumstances, the majority holds that a genuine issue of material fact remains as to whether appellees have incurred any liability on the guaranty agreement because Midlick was named in the agreement but his signature does not appear thereon. The majority concludes that three signatures were required but an issue of fact remains as to whether there was a mutual departure or waiver of that requirement. However, simply because an agreement is drawn for the execution of multiple parties, it does not necessarily follow that, as a matter of law, the agreement *requires* the signature of all and is otherwise unenforceable against the actual signatories thereto absent a showing of mutual departure or waiver. In the construction of contracts, it is the parties' intent which controls, and the form of the agreement is but one of the factors which must be considered. "[T]he first and fundamental rule is to ascertain the intention of the parties, and to this end *the whole instrument, together with its circumstances, must be considered.*" (Emphasis supplied.) *A. C. Alexander Lumber Co. v. Bagley*, 184 Ga. 352, 362 (1) (191 SE 446) (1937). Accordingly, the fact the agreement named three guarantors is certainly one factor to be considered in determining whether there was a requirement that Midlick sign, which requirement serves to release appellees from liability absent a showing of mutual departure or waiver. However, the mere absence of Midlick's signature does *not* obviate a consideration of all of the relevant attendant circumstances in determining whether the agreement nevertheless evidences no requirement that Midlick sign but, rather, the intent that it otherwise be complete and enforceable against appellees without regard to mutual departure or waiver. See generally *Butler Naval Stores Co. v. Glass*, 187 Ga. 317, 323-324 (200 SE 286) (1938).

Considering all of the relevant circumstances and applying the applicable rules of construction, I believe that the guaranty agreement *is* complete and enforceable as against appellees and that there was *no* requirement of Midlick's signature for appellees to waive or

from which they could depart. Among the circumstances which must be considered is that the guaranty agreement was executed and submitted by appellees in connection with the lease of appellant's premises. Accordingly, the guaranty agreement executed by appellees must be construed in conjunction with that contemporaneous lease agreement. See generally *Employers Commercial Union Ins. Co. v. Wrenn*, 132 Ga. App., 287, 288 (2) (208 SE2d 124) (1974). The parties clearly contemplated the creation of a viable and enforceable lease and, by its terms, the lease agreement conditioned its very effectiveness upon appellee Strelzik's execution of a guaranty agreement. Thus, a construction of the guaranty agreement which will uphold its enforceability and the consequent enforceability of the lease is clearly the preferred construction. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. . . ." OCGA § 13-2-2 (4).

The guaranty agreement must itself be construed most strongly against appellees, as the makers thereof. See *Leavitt v. Carr, Abney & Tabb*, 171 Ga. App. 412 (1) (319 SE2d 882) (1984). The executed guaranty was submitted to appellant in ostensible satisfaction of the condition precedent to the creation of an enforceable lease. It was not submitted as a counteroffer to appellant's requirement of a guaranty of the lease. Nothing in the executed guaranty agreement indicated that appellees were proposing it as a counteroffer or that appellees' obligations were expressly conditioned on the signatures of all three of the named guarantors. Moreover, no such proposal as a counteroffer or imposition of a requirement of Midlick's signature was ever verbally communicated to appellant. Since appellant allowed Housecall, Inc., to go into possession of the leased premises, it should have been abundantly clear to appellees that appellant apparently understood the submitted guaranty agreement, not as a conditional counteroffer but, as evincing more than full satisfaction of the condition precedent to the enforceability of the lease. Insofar as appellant was concerned, the unqualified agreement signified that appellee Strelzik had not only given his own required personal guaranty of the lease, he had also made an independent effort to secure co-guarantors and had been successful in convincing one of two others to share the obligation to guaranty Housecall, Inc.'s lease. If appellant's understanding of appellees' execution and submission of the guaranty agreement was mistaken, and it was *not* appellees' intent that their guaranty would signify satisfaction of the condition precedent, then appellees should not have allowed Housecall, Inc., to accept possession of the leased premises without first notifying appellant that they had made only a conditional counteroffer and that the signature of Midlick was necessary to the creation of a viable lease. "Where a written contract has an

apparent meaning at variance with its real meaning, it may bind the author of the ambiguity contrary to its real meaning, if this meaning was so obscurely expressed that the other party was likely to be misled and was misled, and if the circumstances entitled him to timely notice of his mistake, and notice was not given. This is simply the expression in another form of the rule of the code, that where the parties understand the contract differently between themselves, and one knows that the other understands it in a particular sense, that sense is the one in which it shall be interpreted and administered. [OCGA § 13-2-4]." *Hill v. John P. King Mfg. Co.*, 79 Ga. 105, 109-110 (5) (3 SE 445) (1887).

*Peacock v. Horne*, 159 Ga. 707, 722 (2) (126 SE 813) (1925) does not authorize a contrary result. In *Peacock*, the purported purchaser of timber drafted an instrument to convey the interests of the three owners. The instrument, as drafted, contained lines for the signatures of each of the three owners. The purported purchaser then transmitted the draft to the three owners and requested that each sign. Construing the instrument most strongly against the purported purchaser, as the drafter, "the manifest intention of the parties to this contract [was] that it was to be signed by all of the [owners] before it became binding on [those] who signed it; and on the failure and refusal of one of the [owners] to sign it, it was not binding on those who did execute it." *Peacock v. Horne*, supra at 723 (2). The circumstances of the instant case are totally different. It was appellee Strelzik who drafted the instrument and it was appellees who executed and submitted it to appellant. The executed agreement was not delivered as a conditional counteroffer for appellant's acceptance or rejection, but in apparent full satisfaction of the condition precedent to the creation of a valid lease. Appellees did not request that appellant secure the signature of Midlick and did not object when appellant, in reliance on the unqualified guaranty, allowed Housecall, Inc., to enter into possession of the leased premises. Under these circumstances, unlike those of *Peacock v. Horne*, supra, "the principle of law ([OCGA § 13-2-4]) that where the parties to a contract differ among themselves as to its meaning, that meaning placed upon the contract by one of the parties and known to be thus understood by the other at the time shall be held as the true meaning, was applicable. . . ." *Cason v. Duke*, 28 Ga. App. 170, 171 (2) (110 SE 684) (1922).

As the movant for summary judgment, appellant met its burden of producing evidence showing that, notwithstanding the absence of Midlick's signature, it was the recipient of appellees' unqualified guaranty. In opposition, appellees proffered no evidence to show that a genuine issue of material fact remained as to the existence of a requirement for Midlick's signature or as to their liability on the unqualified guaranty which they executed and submitted to appellee.

There being no issue of fact, the interpretation of the contract was for the court and not for a jury. See *Tidwell v. Carroll Bldrs.*, 251 Ga. 415, 417 (2) (306 SE2d 279) (1983). However, for the reasons previously discussed, it is my opinion that the interpretation which was made by the trial court is erroneous and that it was error to grant summary judgment in favor of appellee Strelzik *and* to fail to grant summary judgment in favor of appellant. Therefore, I respectfully dissent to the majority opinion insofar as it fails to reverse the denial of appellant's motion for summary judgment.

I am authorized to state that Judge Beasley joins in this opinion.

DECIDED JULY 14, 1989 —
REHEARINGS DENIED JULY 31, 1989 —

*Harman, Owen, Saunders & Sweeney, Perry A. Phillips, Craig A. Nance*, for appellant.

*Hishon & Ranney, Robert H. Hishon, Dan R. Musick*, for appellees.